## THE VICTORIA GOLD MINING COMPANY, APPELLANT, v. FRASER, ET AL., APPELLEES.

1. CONTRACT THROUGH AGENT.

Persons dealing with a corporation through an agent must, at their peril, advise themselves as to the ·scope of the agency and powers of the agent.

2. AGENT—WHAT POWERS NOT PRESUMED.

The general manager of a mining and milling company has no power, by virtue of his office, to bind the company by contracts for the purchase of machinery.

3. RATIFICATION.

The principal may, by ratification of the unauthorized act made in its behalf, make it its own and become liable thereon.

4. NEW TRIAL—FAILURE OF PROOF—GROUND FOR.

While appellate courts will not disturb a judgment upon a mere question of weight or preponderance of testimony, yet when there is an absence of proof on some point which is fundamental to the recovery, neither verdict nor judgment is conclusive upon the appellate tribunal, and a new trial will be ordered.

*Appeal from the District Court of Arapahoe County.*

Mr. W. N. McBIRD, and Mr. M. B. CARPENTER, for appellant.

Mr. R. D. THOMPSON, for appellees.

BISSELL, J., delivered the opinion of the court.

It is impossible to uphold this judgment. It is unsupported by the evidence though it was entered upon the verdict of a jury. The law by which the rights and correlative obligations of the parties are to be measured was neither accurately nor adequately expressed by the instructions.

Some time in the latter part of the year 1889, Fraser and Chalmers, the appellees, were a copartnership doing business in the city of Denver. On that date they sold a Huntington mill for $765 on the order of one A. J. Ware. It is

their contention that the mill was sold to the appellant, The Victoria Gold Mining Company. The company disputes the assertion and contends that if the mill was sold at all it was sold under such circumstances that the law would make the transaction a sale to Ware, who would be responsible for the purchase price. Manifestly under this issue the principal inquiry was as to the agency of the individual making the purchase. Nothing is more clearly settled than that a person who deals with the agent of a corporate body must advise himself as to the extent and scope of the powers of the agent, unless by reason of his antecedent dealings with the company, or the nature of the business done, and the character of the agency itself, there is such an authority by implication that he has under the law the right to rely upon these appearances, and actual proof of power is thereby dispensed with. Appellate tribunals will never disturb a judgment entered upon the verdict of a jury on a mere question of weight or preponderance of testimony; but wherever as in this case there is an absolute want of proof on some fundamental point which the plaintiff must establish to entitle him to recover, neither a verdict nor a judgment is ever held conclusive on the appellate tribunal. The only testimony tending to establish the fact that the mill was bought for the company, or that Ware who purchased it was the agent of the corporation with such authority to buy as would necessarily bind it, was that made by the proof that Ware was the general manager of the Milling Company. It was a corporation carrying on the milling business in Breckenridge with a large plant of several mills. The defendant proved that under its charter and by-laws Ware was without authority to make any contracts on behalf of the corporation unless he was thereunto previously authorized by the board of directors. It was established that no such authority had ever been conferred on Ware, and that he had never been authorized by the board to buy any mill. Under this showing there was no proof of any agency which would bind the company in the transaction, unless it can be said that authori-

ty to buy a mill is necessarily to be inferred from the appointment of a person to act as the manager of a mill company. There are two reasons why this implication should not arise; first, there was no proof that managers of milling companies usually possess powers from which the inference might be drawn as a matter of law; and second, it is within the experience of every person familiar with mining operations that the manager of a mill company has no such power unless it be directly conferred. To hold otherwise would be to say that such a manager, whose manifest duty it is to run the mill which is furnished him, may of his own accord extend the operations and plant of the company beyond the limits of either their plans, their purposes or their capital. It cannot be said as a matter of law that any such powers are to be implied from the title and the duties incident to the appointment. Under these circumstances it was the duty of the plaintiff to show that the manager as such had the specific and broad power necessary to bind the company by the purchase. It is quite true that under the well established doctrine of ratification the company might be made liable by the receipt of a mill thus purchased, if they appropriated it to their own use or did any other thing to which the law would affix the responsibility arising from the adoption of the unauthorized act. There was no proof of that description offered. It may be conceded that there was some showing that the mill was shipped to the company at Breckenridge by Ware's order, but this was not followed by any proof that the company ever received it, or that they ever appropriated it. In fact the proof was that the mill went on to property in which the company had no interest. Even though it be conceded that Ware received it after its shipment in the name of the corporation, this alone would not amount to such a ratification as is essential to the establishment of the corporate liability.

The jury were not correctly instructed. They were told substantially that Ware was the manager of the company, and that if as such manager he ordered the mill shipped to

it, and it was thus shipped and delivered, the plaintiff might recover. This is not the law, nor, it if were, is it applicable under the proofs, for there was no evidence of any delivery to the company which would make them liable for the goods, and it omitted the essential element of acceptance. The defendant requested instructions relative to the law of agency. They asked that the jury be told when a person dealt with a corporation through one of its members he did it at his peril, and it was his duty to see to it that the person with whom he transacted his business was actually such agent, and that what he did was within the scope of his authority. That this is the law, and that they were entitled to have the jury instructed upon this subject is undoubtedly true. The court neither gave the instructions which were asked, nor any which were the equivalent of them.

The instruction given on the legal force and effect of the by-laws of the company is probably not available as error on this hearing, since no assignment is based on it. It is not deemed necessary to express all the rules which must govern the settlement of this controversy, for they will probably be correctly laid down on the next trial.

Since the judgment is wholly unsupported by the necessary proof of a most material averment, and the court erred in instructing the jury as to the law, this case must be reversed and remanded.

*Reversed.*