TRENT ET AL., RESPONDENTS, *v.* SHERLOCK,
APPELLANT.

[No. 1,' 31.]

[Submitted April 24, 1900.  Decided July 2, 1900.]

*Corporations—Principal and Agent—Superintendent—Implied Powers—Unauthorized Acts—Acquiescence—Bill of Sale—President—Ratification—Delegation of Powers—Evidence.*

1. The superintendent of a mining company had been permitted in one instance to contract for the purchase of machinery, and to sign the contract as "manager," and on another occasion he had deposited the corporate money in his own name, and issued his personal checks thereon, but this had been stopped by the president. *Held*, that such acts did not constitute such a consent and acquiescence on the part of the corporation in the exercise of powers by the superintendent as to authorize him to pledge the company's property for a corporate debt, due for the price of property bought by the company, even though his previous acts might have conferred on him the implied power to purchase property.
2. Buying and selling, or pledging, are acts of a different nature, and an authority in an agent to do the one does not imply the authority to do the other.
3. A creditor of a mining company importuned its president to give him a bill of sale of ore mills of the company as security for a debt. The president refused to do so, but referred the creditor to the company's superintendent, who, he said, had full authority in the matter. The creditor then went to the superintendent, who signed a bill of sale as "manager" of the company. The president was authorized by the company's by-laws to buy and sell property for the company, but was given no power to delegate that authority. *Held*, that the act of the president in referring such creditor to the superintendent did not authorize the latter to execute the bill of sale, nor did his act amount to a ratification of the superintendent's act, though he had an imperfect knowledge of what had been done; and such bill of sale was void as against a subsequent attaching creditor.
4. In the absence of authority, either express or implied, to employ a sub-agent, the trust committed to the agent is personal and cannot be delegated to another.
5. A bill of sale of a portion of a mining company's property, by the superintendent, which he had no authority to make, was not *prima facie* binding on the corporation, and did not tend to show that he had an implied power to make it.
6. Proof of previous acts of the same kind on the part of the agent is not sufficient to show an implied authority from the principal, unless it be also shown that they were done so frequently, and under such circumstances as to warrant the inference that it was the custom or usual course of business.

*Appeal from District Court, Jefferson County; M. H. Parker, Judge.*

ACTION by L. C. Trent and S. V. Trent, partners as L. C. Trent & Co., against Henry L. Sherlock, for possession of

personal property.   From a judgment in favor of plaintiffs, and an order overruling a motion for a new trial, defendant appeals.   Reversed.

### STATEMENT OF THE CASE.

Action in claim and delivery.   The plaintiffs, L. C. and S. V. Trent, are co-partners, engaged in the business of manufacturing and selling mining machinery at Salt Lake City, Utah, under the firm name of L. C. Trent & Co.   This suit was brought by them to recover the possession of two Bryan roller quartz mills complete, with attachments, the value of which is alleged to be $3,900.   Their right of recovery is based upon their prior possession under the following instrument, which purports to have been executed by the Hope Mining Company, a corporation organized under the laws of the state of Washington, and engaged in mining and milling ores at Basin, Montana, by its manager, P. A. H. Franklin:

"'THE MCDERMOTT,

"'B. F. Locke, Manager

"BUTTE, MONTANA, March 12, 1897.

"Know all men by these presents, that the Hope Mining Company of Seattle, Washington, has, in consideration of five hundred dollars, sold & transferred to L. C. Trent & Company two Bryan roller quartz mills and all extras and fittings belonging thereto.   Said L. C. Trent & Company hereby agree to reconvey said property to the said Hope Mining Company on the payment to them of twenty-eight hundred dollars, if such amount is paid within ninety days from date hereof.   In witness whereof said parties have hereunto set their hands & seals this twelfth day (12th day) of March, 1897.

"HOPE MINING CO.

"P. A. H. FRANKLIN, Manager Hope Mining Co."

The facts leading up to and attending the execution of the instrument are the following:   L. C. Trent & Co., during the month of October, 1896, sold to the Hope Mining Company,

through its superintendent, Franklin, two Chilian roller quartz mills at the price of $2,800. The contract of sale was made by a letter of L. C. Trent & Co. to P. A. H. Franklin, as manager of the mining company, in which the terms of the sale were set forth in full, and upon which was written an acceptance in the name of the Hope Mining Company by Franklin, as manager. The mills were to be shipped within 35 days from the date of the contract, but payment was not to be made until after trial by actual operation of them in the works of the company at Basin; the plaintiffs retaining title until full payment should be made. The machines were shipped under this agreement on December 12, 1896, and, after some delay, were installed in the works at Basin. In the meantime the mining company had purchased the Bryan mills in controversy from the Risdon Iron & Locomotive Works, in San Francisco, Cal. These had been shipped to Basin, and, at the time this controversy arose, were lying at the works of the company near the railroad, where they had been unloaded from the cars. On February 28, 1897, the purchase price of the Chilian mills became due. Payment not having been made, L. C. Trent went to Basin on March 8th to effect some arrangement about it, or, in' default of it, to recover the mills under the contract. He proposed to L. J. Pitner, the president of the mining company, that the company give to L. C. Trent & Co. a bill of sale of the Bryan mills. This Pitner refused to do, saying that it would not be fair treatment of the Risdon people to sell property just purchased from them in this way. Thereupon Trent, Franklin and Pitner went to Butte, stopping at the McDermott hotel. During the time they were there Trent again sought to induce Pitner to give him a bill of sale for the Bryan mills. Pitner again refused to do it. Trent then went to the room of Franklin, who executed the instrument quoted above. There is some evidence tending to show that Pitner told Trent, at the McDermott hotel, when urged to execute the bill of sale, to go to Franklin; that Franklin had full authority to act in the matter; and that anything he did would be satis-

factory.   Trent testifies to this, and also that he told Pitner, immediately after his return from Franklin's room, that Franklin had executed the bill of sale.   Pitner denies all connection with the transaction, and says he had no knowledge of it until about April 27th; he having gone to Boston shortly after March 12th, where he remained until the latter date. On the next morning after the arrangement was made in Butte, Trent went to Basin, and took possession of the mills.   After being there for some two or three days, and putting notices upon the mills, he returned to Salt Lake City, leaving the mills lying where he found them, but in charge of the railroad agent.   On April 1, 1897, the defendant, as sheriff of Jefferson county, attached and took the mills in a suit brought by the Risdon Iron & Locomotive Works against the Hope Mining Company to recover judgment for the price of them. The consideration for the instrument in question was an extension of time for 90 days for the payment of the amount due L. C. Trent & Co. for the Chilian mills, and an agreement to let the mining company have on credit some other articles needed to repair the machinery in the works.   These articles were never furnished, and the Chilian mills were retaken by L. C. Trent & Co. in May or June, 1897, and sold to satisfy their claim.   After the amount received for them was applied upon the original purchase price, there still remained due $1,500.   The complaint is in the usual form.   The answer joins issue by general denial, and sets up title in the Hope Mining Company, and justification under the attachment issued in the case of *Risdon Iron & Locomotive Works* v. *Hope Mining Co.*   From a judgment in favor of plaintiffs, and an order denying his motion for a new trial, defendant has appealed.

*Mr. George F. Cowan* and *Mr. William H. De Witt*, for Appellant.

*Messrs. McHatton & Cotter*, for Respondents.

The record shows that Pitner, the president of the company, Field as secretary, Bird as superintendent, and all of

the officers and employes of the Hope Company knew for some considerable period of time that Franklin had executed and delivered the bill of sale under which plaintiffs claim the property in question. It further discloses that the company accepted the benefit of Franklin's act, that is to say, it had the use of the Chilian mills, which were installed in its concentrator during the period of time covered by the extension of the credit from the 28th day of February, 1897, until the company's works were closed by the attachment levied in the suit of the Risdon Company versus the Hope Company. The record further discloses that Trent complied with all of the terms and conditions of his agreement, which was the consideration for the bill of sale, and that the Hope Company received the benefit of the same so far as Trent was able to confer it upon the company. As to whether or not Franklin had authority to execute the bill of sale, we submit that was a question of fact to be submitted to the jury, under proper instructions by the court. (*Mahoney* v. *Butte Hardware Co.*, 19 Mont. page 377, 384–5.) This question, as the record will disclose, was submitted to the jury by the court and no error is assigned upon the instructions or the rulings of the court covering the point. It is also shown that Franklin was either the general manager or general superintendent of the company, signing himself as general manager or managing agent, the president Pitner claiming that he was only the general superintendent. There is little distinction between the powers of a general manager or agent and a superintendent of a corporation. (4 Thompson on Corporations, Secs. 4853, 4858.) A mining superintendent has the right to expend the company's funds for necessary supplies for the mine without express authority. (*Jones* v. *Clark*, 42 Cal. 180; *Stuart* v. *Adams et al.*, 89 Cal. 367, 26 Pac. Rep. 970.) Mr. Thompson in his work on corporations says that the general agent is virtually the corporation itself. (4 Thompson on Corporations, 4848.)

In this case the evidence shows that Franklin had authority to purchase the Chilian mills; that they were accepted and in-

stalled by the company, and used. It is also shown by the record that he purchased the Bryan mills from the Risdon people, and that his acts were ratified. It is further shown that he entered into the contract for the extension of the time for payment of the Chilian mills to plaintiffs, and also for the furnishing of some additional rolls and supplies therefor, and as a consideration for the said extension of time and the furnishing of such supplies he executed and delivered to the plaintiffs the bill of sale in controversy in this action. It is further shown that the company had full knowledge of all these acts of Franklin, made no objection thereto, accepted the benefits of the same without any complaint. We submit that under the showing made in this case that the authority of Franklin is fully shown in the first instance. All these facts taken together clearly show the authority of Franklin to execute and deliver the bill of sale. (*Starr* v. *Gregory Con. Mg. Co.*, 6 Mont. pp. 465, 487.) Corporations in the nature of their constitution must act through their officers and agents. There is no other mode possible in which they can act. The act of any officer is the act of the company, and even the acts of their many mere agents are considered the acts of the company. The authorities are numerous and uniform on this point. (*Starr* v. *Gregory Con. Mg. Co.*, 6 Mont. 487; citing *Merchants Bank* v. *State Bank*, 10 Wallace, 644, etc.; Woods Field on Corporations, Secs. 181–83, 220; Taylor on Corporations, Secs. 193–204.)

We submit that under the foregoing statements and the authorities that Franklin's authority to execute the bill of sale is affirmatively shown. Admitting, however, for the purposes of the argument, that his authority in the first instance is not shown, we submit that the subsequent conduct of the company and its officers in accepting the benefits of his unauthorized act without objection would amount to a ratification, which is equivalent to a previous authorization. Pitner says that he became acquainted with the nature of the paper that Franklin had executed and delivered to Trent during the latter part of April, 1897. Field and Bird were

made acquainted with it immediately after it had been exe-
cuted and delivered to Trent, the evidence showing that he
delivered the paper to them for their perusal, and no objec-
tion was made to Franklin's authority, or otherwise. The
record further shows that Trent took possession of the prop-
erty and was in possession of it by his agent at the time that
the defendant in this case attempted to levy the writ of at-
tachment thereon. During all of this time no objection was
made by the company or its officers as to Franklin's authority,
neither did the company decline to accept the benefits con-
ferred upon it by reason of Franklin's act. It is a well es-
tablished principle of law that the unauthorized act of the
agent may be ratified. (*Con. Gregory M. Co.* v. *Raber*, 1
Colo. 512; *Union Mining Co.* v. *Bank*, 1 Colo. 530; *Shaver*
v. *Bear River Co.*, 10 Cal. 396; *Underhill* v. *Santa Bar-
bara, Etc. Co.*, 93 Cal. 312, 28 Pac. 1049.) Silence on the
part of the principal for a sufficient length of time without a
sufficient excuse, as in this case, will amount to a ratification.
(1 Am. & Eng. Ency. of Law, U. S. 1203, Notes.) Accepting
benefits arising from the unauthorized act or contract of an
agent is a ratification of such act or contract. (*Despatch Line*
v. *Bellamy Co.*, 32 Amer. Dec. 203; 4 Thompson on Corpo-
rations, Secs. 5303–7; *Shaver* v. *Bear River Co.*, 10 Cal.
396; Angel & Ames on Corporations, 304; *Underhill* v. *Santa
Barba Company*, 93 Cal. 312; Civil Code, Sec. 3086, Note.)
A ratification by a corporation may be made in the same man-
ner as by an individual. (4 Thompson on Corporations, Secs.
5285, 5286.) An acquiescence after knowledge of the agent's
act or contract is a ratification of the same. (4 Thompson on
Corporations, Secs. 5298–5302.) Where the act or contract
of the agent is beneficial to the corporation, as in this case it
is shown to have been, a ratification will be presumed on very
slight evidence. (4 Thompson on Corporations, Sec. 5312.)
Respondent further submits that the company had conferred
upon Franklin such authority as was sufficient in this case for
the reason that by its acts and conduct it had ostensibly con-
ferred upon Franklin the authority to execute and deliver the

bill of sale and thereby mislead the plaintiffs to their injury
and damage.    Ostensible authority is such as a party inten-
tionally or by want of ordinary care causes a third person to
believe a person possesses. (Civil Code, Secs. 3092–3; *Heald*
v. *Handy*, 89 Cal. 632. 27 Pac. 67.)

The bill of sale we submit was executed and delivered to
Trent for a valuable consideration, Trent agreeing to extend
his credit and to forbear suing the company, and also to fur-
nish certain supplies and money.    Under the agreement by
which the Chilian mills were furnished to the company, Trent
at the expiration of the contract could have removed them on
the 28th day of February, 1897, had it not been that Frank-
lin procured the extension in consideration for the execution
of the bill of sale.    The bill of sale being based upon a valu-
able consideration can be enforced against the company and
its successors in interest and its creditors, where the posses-
sion of the property was taken, as is shown was done in this
case.    Any benefit conferred or agreed to be conferred on the
promisor by another, etc., is a good consideration.    (Civil
Code, Secs. 2160, Note, 2161, 2169–70.)    Any abandonment
of right by the promisee is a good consideration.    (*Pitner* v.
*Gentle*, 49 Mo. 74.)    Forbearance to sue is a good consider-
ation.    (*Stuart* v. *McGuin*, 1 Cow. 99; *Ward* v. *Friar*, 19
Wend. 494; *Hartford Ins. Co.* v. *Olcott*, 97 Ill. 439.)

Franklin certainly had in view the benefit of his company
when he executed and delivered the bill of sale, and the record
discloses that Pitner and the other officers concurred with him
in the necessity of preventing any proceeding on the part of
the plaintiffs; but it matters not what Franklin's motives were
if he had the authority, either actual or ostensible, or if not
having the authority in the first instance his unauthorized act
was afterwards ratified by the company, then it was binding.
Courts cannot inquire into the motives which prompt acts of
corporate officers within their powers, particularly where the
act is not attacked on the ground of fraud, collusion, con-
spiracy, etc.    (*Trisconi* v. *Winshift*, 9 S. Rep. 29.)

It is shown in this case that Franklin was the moving spirit

in the Hope Mining Company at the time of the execution and delivery of the bill of sale and was in custody of the machinery sold and had control of the same for the reason that the record discloses that Pitner referred Trent to him with the statement that anything that he would do would be satisfactory to Pitner. A bill of sale executed by an officer under the corporate seal and signed in its behalf by one who had custody of the note sold thereby, and testimony that the corporation executed it by him as vice president and the purchaser testifying that he purchased the note of the corporation, is sufficient to show authority in the agent to execute the same. (*Security Bank* v. *Fogg*, 19 N. E. 387.) Where a mortgage is executed by the president and secretary of a corporation, with the seal attached, the burden of proof is on the corporation to show that they were not authorized to execute. (*Shallard* v. *Navigation Co.*, 70 Cal. 144.) The company having, as we submit, accepted the benefit of and ratified Franklin's act, defendant cannot controvert his authority or disaffirm the sale to respondents by him. (1 Am. & Eng. Ency. of Law (U. S.) 1181 *et seq.*; *Scott* v. *Young Men's Soc.*, 1 Douglas (Mich.), 119, 149; *Tennis et al.* v. *Barnes et al.*, Colo., 52 Pac. Rep 1038-40.)

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

A reversal of the judgment herein is sought upon two grounds: (1) That the trial court erred in admitting in evidence the paper purporting to be a bill of sale executed by P. A. H. Franklin, as manager for the Hope Mining Company; and (2) that it committed error in refusing to give instruction No. 6, as requested by defendant, as follows: "An authority of Franklin to make the sale of the property in controversy, as it is claimed by plaintiffs that he did, cannot be implied from evidence that he did attempt to make the sale in question."

1. No principle of law is more clearly settled than that an agent to whom is intrusted by a corporation the management

of its local affairs, whether such agent be designated as president, general manager, or superintendent, may bind his principal by contracts which are necessary, proper, or usual to be made in the ordinary prosecution of its business. (Thompson on Corporations, Sec. 4850; *Victoria Gold Mining Co.* v. *Fraser*, 2 Colo. App. 14, 29 Pac. 667; *Sparks* v. *Dispatch Transfer Co.*, 104 Mo. 531, 15 S. W. 417, 12 L. R. A. 714; *Ceeder* v. *Lumber Co.*, 86 Mich. 541, 49 N. W. 575; *Stokes* v. *Jersey Pottery Co.*, 46 N. J. Law, 237; *Georgia Military Academy* v. *Estill*, 77 Ga. 409.) The fact that he occupies, by the consent of the board of directors, the position of such an agent, implies, without further proof, the authority to do anything which the corporation itself may do, so long as the act done pertains to the ordinary business of the company. (*Mathias* v. *White Sulphur Springs Association*, 19 Mont. 359, 48 Pac. 624; *Ceeder* v. *Lumber Co.*, *supra*; *Adams Mining Co.* v. *Senter*, 26 Mich. 76; *Marlatt* v. *Levee Steam Cotton Press Co.*, 10 La. 583; *Siebe* v. *J. Hendy Machine Works*, 86 Cal. 391, 25 Pac. 14.) Even where the contract in question pertains to matters without the ordinary course of business, but within the power of the corporation,—that is, such as is not prohibited by its charter or by express provision of law, —the authority of the agent may be established by proof of the "course of business between the parties themselves; by the usages and practice which the company may have permitted to grow up in its business; and by the knowledge which the board, charged with the duty of controlling and conducting the transactions and property of the corporation, had, or must be presumed to have had, of the acts and doings of its subordinates in and about the affairs of the corporation." (*Mahoney Mining Co.* v. *Anglo-Californian Bank*, 104 U. S. 192, 26 L. Ed. 707. See, also, *Martin* v. *Webb*, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49; *Sparks* v. *Transfer Co.*, *supra*.) "There is no reason, and can be no legal principle, which will put the agent of a corporation on any different footing than the agent of an individual in regard to the same business." (*Ceeder* v. *Lumber Co.*, *supra*.)

Applying these general principles to the facts in this case, what rights, if any, did L. C. Trent & Co. acquire under the instrument in question? This instrument is denominated in the record "a bill of sale." It is clear from an inspection of it, however, in the light of the facts surrounding its execution, that it is in fact, and was intended to be, a pledge of the Bryan mills as security for the price of the Chilian mills, which fell due on February 28, 1897. The ground of the objection to its introduction in evidence was, among others, that the proof did not show either an express or implied authority to enter into the arrangement disclosed by it. The proofs presented by the plaintiffs show that Franklin was in fact the superintendent of the mining and milling operations of the company at Basin, and not the general manager. One W. D. Field was the business manager, and had control over the finances of the corporation. Pitner was the president, and in supreme charge of its local affairs. The checks of the company were signed by Field under authority of Pitner, and countersigned by Franklin. Some time before the date of the transaction in question, Franklin had exceeded his authority by depositing the company's money in his own name and issuing his personal checks; but this had been stopped by Pitner as soon as it came to his knowledge. In one instance, before the purchase of the Chilian mills from plaintiffs, Franklin had contracted for machinery, and signed the contract as manager. There was no proof that he had any authority from the directors to sell or pledge the property of the company, nor that he had ever assumed authority to do so before. Assuming that, by acquiescence by the company in his previous conduct, he had the implied authority to purchase machinery for use in the mills, and pledge the credit of the company for it, it does not therefore follow that he was authorized to sell or pledge the property thus purchased. Buying and selling, or pledging, are acts of a different nature. An authority to do the one by no means implies the authority to do the other; and, when it is sought to show an implied authority in the agent to do the act in question by proof of consent or

acquiescence of the principal, this can be done only by proof of consent to, or acquiescence in, acts of a similar nature, or by proof of such acts as tend to show a general power. (1 Am. & Eng. Ency. Law (2nd Ed.), 1002; *McAlpin* v. *Cassidy*, 17 Tex. 449; *Rankin* v. *Mining Co.*, 4 Nev. 78; Thompson on Corporations, Sec. 4633.) The fact that Franklin, on two occasions, assumed to act as general manager of the business of the company in the purchase of machinery for use in the mill at Basin, does not in any way tend to show such a usage or practice in its affairs as that one dealing with him would be justified in acting upon the presumption that he had authority to execute the instrument in question.

Nor do we think the proof tends in any way to establish a ratification of the transaction on the part of the company. The proof on this point is meager and unsatisfactory at best, for it rests entirely upon a conflict of statement between Pitner and L. C. Trent. At most it shows merely that Pitner had referred Trent to Franklin, and had knowledge of some sort of an arrangement about the matter, made between them at the McDermott hotel in Butte. True, it appeared from defendant's proof that Pitner was authorized by the by-laws of the company to make contracts for the purchase and sale of all property bought or sold by the company; but there was no power given him to delegate this authority to any other person. It is the rule that in the absence of authority, either express or implied, to employ a subagent, the trust committed to the agent is personal, and cannot be delegated to another. (Mechem on Agency, Sec. 185.) This is especially true where the performance of the agency requires the exercise of special skill, judgment or discretion. (*Id.* Sec. 186.) There was no proof tending to show that the directors ever knew anything of the transaction. Upon the theory, therefore, that the company could confer upon Pitner the authority to sell any or all of its property in Montana, whenever, in his judgment, it might be proper to do so, and that this authority included the power to mortgage or pledge the property at his discretion, he could not, unless also clothed by the company

with the power of substitution, delegate this trust to Franklin. If he could not delegate this trust to Franklin, neither could he under the circumstances, ratify Franklin's act, at least not until he was fully informed of the nature of it, which did not occur until long after the rights of the Risdon Iron & Locomotive Works had accrued under the attachment in defendant's hands. It was then out of Pitner's power to defeat the rights of the attaching creditor by any act of ratification.

The instrument in question not being *prima facie* binding upon the corporation, because not executed by Franklin within the scope of his authority in the ordinary course of business, and the proof having failed to show that it was authorized by the usage of the business, or ratified by the company, it was clearly not competent evidence in favor of the plaintiffs, and should have been excluded.

2. To comment upon the instruction requested and refused would be to reiterate in large measure what has already been said. The making of the contract was clearly not within the scope of the ordinary authority of the superintendent. It was not *prima facie* binding upon the company. The fact that Franklin did attempt to enter into it did not tend in any way to show that he had the implied authority to make it. Even proof of previous acts of the same kind on his part would not be sufficient to show an implied authority from the company, unless it be also shown that they were done so frequently, and under such circumstances, as to warrant the inference that it was the custom or usual course of the business. (*Bank of Deer Lodge* v. *Hope Mining Co.*, 3 Mont. 146; *Helena Nat'l Bank* v. *Rocky Mt. Tel. Co.*, 20 Mont. 379, 51 Pac. 829.) The jury should therefore have been instructed as defendant requested.

It is ordered that the judgment and order appealed from be reversed, and that a new trial be granted.

*Reversed and remanded.*

MR. JUSTICE WORD, not having been a member of the Court when this case was argued, took no part in the decision.