The record discloses the following facts, in regard to which there is no controversy: One D. S. Russell, was on and prior to 21 September, 1900, the owner of one Junior Westinghouse engine, No. 629, two band wheels and one 60-horse-power boiler, with the fixtures attached thereto. On or about said date he entering into a contract with the defendants Machin and others, trading under the firm name and style of the Ottalay Novelty Company, to sell said company said engine, boiler and machinery at the price of $450, cash, which amount was to be paid to the plaintiff, the Asheville Supply and Foundry Company, for the benefit and on account of said Russell. Pursuant to the terms of the contract the engine and boiler were turned over to the purchasing company to enable it to make certain tests of the boiler. The defendant company failed to comply with its contract or to return the property. The Asheville Supply and Foundry Company and Russell, at the November Term, 1900, brought this action for the purpose of recovering possession of the property. At the institution of the action plaintiffs obtained an order for the immediate delivery of the property, and defendant company executed an undertaking with O. D. Revell as surety for its forthcoming, if the final judgment so directed. At the September Term, 1901, the defendants having failed to file an answer, judgment was rendered by default against defendants and for plaintiffs, adjudging them to be the owners of the property and entitled to the immediate possession thereof. The cause was retained for the purpose of assessing damages for the detention and deterioration. It was further adjudged that, if possession could not, for any reason, be had, the plaintiffs recover of the surety on the undertaking the sum of $900, to be discharged by the payment of such amount as should be assessed by the jury as the value of the property and damages. The plaintiffs did not immediately take out execution for the delivery of the property. The defendants Machin and Atkins delivered it to the Asheville Woodworking Company, a corporation in which they and said O. D. Revell were stockholders. This corporation was adjudged bankrupt, and the property went into the possession of Mr. (740) Whitson, trustee. On 1 September, 1902, the said trustee sold all of the property of the Asheville Woodworking Company, including *Page 607 
the engine and boiler in controversy, at public auction, when it was purchased by W. H. Westall, who took immediate possession. On 20 January, 1903, an execution was issued, at the suggestion of Revell, upon the judgment of the Asheville Supply and Foundry Company, to the Sheriff of Buncombe County, directing him to take possession of the property and deliver it to the plaintiffs. The sheriff, J. H. Reed, took the property into his possession, whereupon W. H. Westall brought an action against the said sheriff, claiming that he was the owner and demanding possession, and took possession thereof. Defendant Reed filed an answer denying that the plaintiff Westall was the owner of the property. On 28 September, 1904, the defendants in the original action, together with O. D. Revell, the surety on the undertaking, filed a supplemental answer in which they alleged the facts herein set forth, and further alleged: "That the defendants are informed and believe that, at said sale of the property of the Asheville Woodworking Company by said trustee in bankruptcy, the plaintiffs in said action, in person and by attorney, appeared at said sale, and, a question being raised as to whether or not the said sale by the said trustee in bankruptcy would pass a good title to the property described in the complaint herein, the said plaintiffs and their said attorney, publicly and in the hearing of those persons then and there assembled, announced and declared, in substance, that the plaintiffs in this cause had no claim to the property described in the complaint herein and did not own the same, and did not expect to contest the title thereto, and the purchaser at said bankrupt sale would acquire a good title to said property, freed and discharged from all other claims of the plaintiffs in this action. And the defendants further say that they are advised and believe that the said Westall; relying upon the said statements of the plaintiffs and their attorney, bid off the said property at said bankrupt sale in good faith, believing that he would get a good title thereto, and that the said W. H. Westall now claims the title to said property by virtue of said conduct of the plaintiffs at said sale. And these defendants further say that they are advised, informed and believe that the said plaintiffs, (741) by the reason of their conduct hereinbefore set forth, are estopped to recover the possession of said property, or the value thereof, from these defendants, since they have, by their conduct, put it beyond the power of the defendants or O. D. Revell, their surety, to deliver the possession of said property to said plaintiffs. And the defendants further say that they are advised, informed and believe that said W. H. Westall is a necessary party to this action. The defendants further aver that, by reason of the acts, conduct and disclaimer of title by the plaintiffs, as recited in paragraph 3 above, and their refusal to take possession of said property, O. D. Revell, the surety on the defendant's *Page 608 
replevin bond, is forever released and discharged from all liability on said bond."
An order was made making Westall a party to the original action. The two cases were consolidated and brought to trial. The jury found, upon issues submitted to them —
"First. That at the time of the sale of the property in controversy by Whitson, trustee in bankruptcy, it belonged to the plaintiffs Asheville Supply and Foundry Company and D. S. Russell.
"Second. That Whitson, trustee, at the time of the sale had no title to the property.
"Third. That D. S. Russell had been paid for his interest in the property by the Asheville Supply and Foundry Company."
The following additional issues, in regard to which there was controversy, were submitted to the jury:
5. "Were the acts and conduct of the plaintiffs in said original claim and delivery action, or either of them, on the day of the sale by Whitson, trustee, such as to estop him or it from claiming any further title or interest in the boiler and engine sold by Whitson, trustee, at said sale?
6. "Did plaintiffs in said original claim and delivery action, or either of them, by his or its conduct or acts on the day of the sale by Whitson, trustee in bankruptcy, release the surety, O. D. Revell, from further liability on the replevin bond executed by said Revell on 23 September, 1900?
7. "Did W. H. Westall acquire good title to the said property by his purchase at the sale by Whitson, trustee in bankruptcy, by reason (742) of the waiver or estoppel of said plaintiffs in said original claim and delivery action, or either of them, to thereafter claim said property, to wit, boiler and engine?"
At the close of all of the evidence "Mr. Bourne moves the court for judgment in behalf of the Asheville Supply and Foundry Company and D. S. Russell against Machin and Atkins and the surety on their bond in claim and delivery for the sum of $450, with interest thereon from the date of the seizure of the property." Motion overruled and exception allowed.
This motion was based upon all of the evidence introduced in the case and the record of the consolidated cases. The court instructed the jury that if they believed the evidence they should answer the fifth issue "Yes." The court answered the sixth and the seventh issues "Yes," upon the coming in of the verdict, to all of which no exception was taken. The court rendered judgment upon the verdict against the plaintiffs, except as to a small amount for damage not material to this appeal.
Plaintiff, the Asheville Supply and Foundry Company, excepted and appealed. *Page 609 
The trial of this case took quite a wide range and the record comes to this Court in a somewhat confused condition. Much of the testimony and a number of the exceptions are rendered immaterial by the elimination of Russell, one of the original plaintiffs, by the verdict of the jury in finding that his interest in the property passed to his coplaintiff the Asheville Supply and Foundry Company. The jury having found that the title to the property was, prior to the sale by Whitson, trustee, in the Asheville Supply and Foundry Company, the sole question is, whether this corporation has lost or been deprived of its title by what occurred at the time of the sale by Whitson, trustee. There is no suggestion that it has sold the property or, by any contract, parted with its title. It is, however, alleged in the supplemental answer and testimony introduced to sustain the contention that it has lost its title by way of estoppel (743)in pais. His Honor, being of the opinion that if the evidence bearing upon this issue was believed by the jury they should answer it in the affirmative, so instructed them. The contention of the plaintiff corporation to the contrary, while not presented by an exception to the charge, is presented by exceptions to the admission of the evidence and by motion for judgment upon the whole of the evidence. It would have been better practice to have excepted to the instruction on the fifth issue, but we think its other exceptions fairly present its contentions. The answers to the sixth and seventh issues are, as his Honor held, dependent upon the correctness of the instruction upon the fifth, hence the question upon which the decision of the appeal must rest is, whether his Honor correctly admitted and interpreted the evidence relevant to the alleged estoppel. It is unquestionably true, and quite elementary, that title to property may pass, or at least the true owner may be precluded from asserting his title, as against a purchaser from one having no title, by conduct which comes within the definition of an estoppelin pais. In Mason v. Williams, 53 N.C. 478, it appeared that the plaintiff was the owner of an engine; that, at a sale made by Pescud, trustee, he was present and upon the statement being made in his hearing that Pescud's title was good, made no objection, and bid on the property. It was purchased by defendant. Mason thereafter sued him for the property. The court, upon an agreed state of facts, held that plaintiff was estopped. Battle, J., thus states the contention of the defendant: "The argument is that it must be taken either that the plaintiff had waived his title and thereby authorized Pescud to sell the engine, or that he can not now be allowed to assert it, because it would be *Page 610 
a fraud upon the defendant to permit him to do so." The judgment was reversed because the court did not submit the questions, upon which the estoppel depended, to the jury. The principle upon which the rights of the parties depended is thus stated by the learned justice: "When one purchases a chattel from one who is not the owner of it, and it is admitted by the parties or found by the jury as a fact that the purchaser was induced to make the purchase by the declarations and acts of the true owner, the latter will be estopped from impeaching (744) the transaction." This principle lies at the base of the doctrine of estoppel which, as said by Pearson, J., in Armfield v. Moore,44 N.C. 159, "lies at the foundation of all fair dealing between man and man." Mason v. Williams came before this Court, upon a second appeal, and is reported in 66 N.C. 564. The court below. Barnes, J., charged the jury that "If the evidence satisfied them that the defendant was induced to make the purchase by the declarations or acts of the plaintiff, the latter would be estopped from impeaching the transaction." The majority of the Court sustained the charge and affirmed the judgment for the defendant. Pearson, C. J., and Dick, J., dissented, not from the language of the instruction, but from its application to the facts, and Justice Boyden "concurred in the principles set out in the dissent, but felt bound by the verdict of the jury." Conceding, for the purpose of this discussion, that the language used by Mr. Bourne, the attorney for plaintiff, and of Mr. Woody, comes within the principle of Mason v. Williams and other cases, and that, if they or either of them had been the owners of the property, the jury would have been justified in finding that they were estopped, the question arises whether they bore such relation to the corporation as entitled them or either of them to authorize Whitson, trustee, to sell its property or to make it a fraud upon Westall to assert its title against him. Mr. Bourne was counsel at the time of the sale for plaintiff corporation and for Whitson, trustee. He says: "At the trustee's sale I attended as counsel for the trustee. My firm was general counsel for the Asheville Supply and Foundry Company." An inspection of the testimony does not disclose that Mr. Bourne had any other or further power to bind his clients in respect to the property than pertained to his employment as an attorney at law. We do not find that he was attorney in fact. Giving, therefore, the full legal import to his language at the time of the sale contended for by defendant, and conceding that it was sufficient, as a matter of law, to estop him, we do not think it could have such effect upon the rights of his client. He certainly had no authority to sell the property, or to authorize Whitson, trustee, to do so. "The powers of an (745) attorney are to be determined, in a large measure, from the purpose of his employment; he has an implied authority to do anything *Page 611 
necessarily incidental to the discharge of the purpose for which he was retained, but beyond this his power ceases." 3 A. E. Enc., 345. In Moye v. Cogdell, 69 N.C. 93, it was said: "An attorney can not compromise his client's case without special authority to do so, nor can he receive in payment of a debt due his client anything except the legal currency of the country." It was held, in that case, that an attorney employed to collect a debt by judgment could not release the judgment by taking a draft at sixty days. We are of the opinion that the evidence of Mr. Bourne's declarations at the time of the sale was not admissible for the purpose of affecting plaintiff's title, nor, after being admitted, could they be given such effect. In regard to Mr. Woody's authority to bind the corporation, there is more doubt. Mr. Westall says, "He is the manager of the Asheville Supply and Foundry Company and, I think, president, but I am not sure. . . . I know he claimed to be general manager — managing the business." Mr. Woody was dead at the time of the trial. It seems that Mr. Speed was president of the plaintiff corporation. In the affidavit to the complaint Mr. Woody describes himself as the "general manager." It does not appear what his duties or powers are, or to what extent he was empowered to represent and act for the corporation in respect to the sale of this property, or compromise its rights in the litigation. The extent of the power of the general manager of a corporation to dispose of its property out of the usual course of its business depends largely upon the character of the business, the charter, by-laws, etc. We could not say, as a matter of law, in the absence of any evidence upon these points, that he had such power.Judge Thompson says that "The general manager has power to bind the corporation by acts done in the ordinary course of its business." 10 Cyc., 924. In Trent v. Sherlock, 24 Mont. 255, it is held that a bill of sale of a portion of the mining company's property by the superintendent, which he has no authority to make, was not prima facie binding on the corporation and did not tend to show that he had an implied power to make it. "His implied power and authority are limited to do only those things which are incident to the usual business (746) of the corporation, or to that branch of it entrusted to his management. Such general manager's authority is as broad as, and no broader than, the scope of his employment and agency and the nature of the corporate business." 2 Purdy's Beach Private Corp., 1200. It is impossible to do more than lay down and apply this general principle. Each case involves so many elements peculiar to itself that it must be decided in the light of the facts disclosed, guided by this general principle.
Thus considered, we do not find any evidence of authority in Woody to attend the sale by Whitson, trustee, and, by his acts and declarations, *Page 612 
estop the plaintiff corporation from asserting title to its property or release the surety from his liability on the judgment. The plaintiff had successfully prosecuted its claim to the property, established its title in an action in which defendants made no defense. It filed no answer to the complaint. For reasons apparent on the face of the record the cause was retained for final judgment against the bondsman. The amount of his liability could not be fixed otherwise than by a verdict of the jury. By the wrongful conduct of defendants Machin and Atkins, the property was put in the possession of a corporation of which they and Revell, the surety, were the principal stockholders and, in this way, passed into the possession of Whitson, trustee in bankruptcy. He undertook to sell it, together with the other property of the bankrupt corporation. It seems that, some question having arisen between the attorneys present at the sale, Mr. Bourne stated that his clients did not claim the property, but looked to the bond for its value. This was not a statement of any fact which bound the client, but rather an opinion of Mr. Bourne as its attorney. The fact that the property belonged to the plaintiff corporation was known, and constituted the basis of the conversation. No fact was concealed or misrepresented. Every person buying at a bankrupt sale, as at one made by the sheriff, must take notice that nothing is proposed to be sold except the interest of the bankrupt or the defendant in the execution. We do not think that the plaintiff corporation has, by any officer empowered to act for it, (747) either authorized Whitson, trustee, to sell its property, or done anything which makes it fraudulent to assert its title against Westall. This is the test of defendant's claim, as laid down in Masonv. Williams, supra.
In the view of the record most favorable to defendants, the jury should have been permitted to pass, not only upon the testimony, but make such reasonable inferences as should be drawn therefrom. In Mason v. Williams,supra, although there was an agreed state of facts, this Court held that the ultimate decision of the existence of the constituent elements of an estoppel should have been submitted to the jury. This view of the case would work a new trial. It is evident, however, that with the testimony in regard to Mr. Bourne's and Mr. Woody's declarations excluded, as we think they should be, there would be nothing to go to the jury upon the fifth issue. The motion for judgment made by plaintiff should have been allowed.
The cause will be remanded to the Superior Court of Buncombe, with direction to set aside the verdict on the fifth, sixth and seventh issues and render judgment upon the verdict on the other issues, fixing the value and damages in such way as the parties may agree, or may be in accordance with the course and practice of the court. *Page 613 
Defendants moved in this Court that appellant be not allowed to tax defendants with the cost of sending up and printing the testimony. It appears from the record that the case on appeal was not sent to his Honor until 28 April, 1909, the cause having been tried at the March Term, 1907. His Honor made the following statement at the end of the case settled by him:
"This is the case on appeal settled by me at Greenville, N.C. on 28 April, 1909. I am now inclined to the opinion that more of the evidence than is necessary is in the case, but the case was tried more than two years ago. The appellants have sent down the cases on appeal, and the record, to me today. While I am engaged in Pitt Court, it is not possible for me now, in the time allowed on the appeal to go up for the approaching term of the Supreme Court, to eliminate what may be the unnecessary parts of the evidence, which appears to be the only objection to this statement. It is better to send it up as it is (748) or to avail myself of the right to refuse to settle the case, because of laches in the appellant, and I elect to pursue the former course."
It is manifest that his Honor could not, after two years' delay, undertake to do more. It was unfortunate that the settlement of the case was delayed so long; there were valid reasons for the delay. It would be impossible for us to separate such part of the evidence as was unnecessary from that which was so. It may not be improper to suggest that, while the stenographer properly took notes of all that occurred upon the trial, such parts as have no relevancy to the exceptions should be eliminated from the record on appeal.
Error.
Cited: Lynch v. Johnson, 171 N.C. 630.