ELECTRICAL PRODUCTS CONSOLIDATED, Respondent,
*v.* EL CAMPO, INC., Appellant.

(No. 7,662.)

(Submitted September 30, 1937.   Decided November 4, 1937.)

[73 Pac. (2d) 199.]

*Mr. Rockwood Brown, Mr. Horace S. Davis, Mr. Melvin N. Hoines,* and *Mr. Franklin S. Longan,* for Appellant, submitted an original and a reply brief; *Mr. Davis* argued the cause orally.

*Messrs. Graybill & Graybill,* and *Mr. P. J. Gilfeather,* for Respondent, submitted a brief; *Mr. Leo C. Graybill* and *Mr. Gilfeather* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Cascade county, rendered on a verdict directed by the court in favor of plaintiff, Electrical Products Consolidated, a corporation, respondent here. Plaintiff sought to recover from El Campo, Inc., a corporation, defendant and appellant, $525, with interest and attorney's fees, as damages resulting from the breach of an alleged written contract.

The contract was entered into by Charles Day, as manager of defendant corporation, and the Electrical Products Corporation, the alleged assignor of plaintiff. It purported to be one for the installation of a Claude neon sign and the maintenance thereof for a period of 36 months. It provided for specified monthly payments to be made by defendant over the same period. A down payment of $42 was made by Day at the time of the execution of the contract. No further payments were ever made and, apparently, from the record it is disclosed that the corporation refused to abide by its terms. The sign was installed in July of 1930, soon after the execution of the contract, and it was repossessed in May of 1931.

The complaint recited the particulars of the execution and carried a copy of the contract. A demurrer was filed to the complaint, and in due time overruled. Later an answer was filed, denying the essential allegations of the complaint, including the execution of the contract by defendant corporation. At the trial of the cause defendant first objected to the introduction of all testimony under the allegations of the complaint, for the reason that the complaint did not state a cause of action. This objection was overruled and the trial proceeded.

At the close of plaintiff's case both sides rested, and finally each side submitted a motion for a directed verdict.

Plaintiff's motion was granted. A verdict in favor of plaintiff was returned by direction of the court, and thereafter judgment was entered accordingly. The appeal is from the judgment so rendered on the verdict.

Several assignments of error are urged. They involve the interpretation of the contract, particularly as to whether it was one providing for a penalty, as differentiated from liquidated damages; and the admissibility of oral proof of the assignment of the contract. The most important assignment of error, however, involves the matter of Day's authority to enter into the written contract so as to bind his corporation without written authority in that behalf.

There was a very emphatic difference of opinion between the parties as to the effect of the respective motions for directed verdict. The record discloses that, at the close of plaintiff's case, and after both sides had rested, defendant's counsel announced that he had a motion to make. Plaintiff's counsel suggested that he also had a motion to make, and requested that the jury be caused to retire while the motions were made and argued. The court ordered the jury to retire, whereupon plaintiff's counsel made a motion for a directed verdict on the ground that the only questions involved were questions of law, and that no questions of fact, upon which the minds of reasonable men could differ, were left for decision. Defendant's counsel then asked the court if he should make his motion before the ruling on plaintiff's motion, and the court replied that he should do so and that it would consider both motions together. In response to this request of the court, counsel for defendant made this statement: ''Pursuant to the instructions of the court, defendant presents its motion before the plaintiff's motion is ruled upon, and without a waiver thereby of the right to go to the jury, but with the express reservation of that right.'' Counsel for defendant then made his final motion for a directed verdict on several grounds, one of which was that the authority of Day to bind the defendant corporation had not been established in conformity with our statutes and legal requirements generally.

There then ensued an argument between court and counsel. It was the contention of plaintiff's counsel that the two motions for directed verdict took the case away from the jury and submitted it to the court on both the law and facts. Plaintiff, as respondent here, still adheres to that contention. Counsel for defendant did not then agree that such was the law and does not concede the matter upon this appeal. The court did not take the cause away from the jury, but instructed it to return a verdict for plaintiff, which it did. This, in effect, was a determination of the issues by the court. (*Consolidated G. & S. Min. Co.* v. *Struthers,* 41 Mont. 565, 572, 111 Pac. 152; compare, also, *Fifty Associates Co.* v. *Quigley,* 56 Mont. 348, 185 Pac. 155.)

The question as to the status of such a matter upon the presentation of both motions is not a new one. There is some conflict in the decisions with relation thereto; however, the majority rule seems to be to the effect that, when motions are made by both parties, in the absence of a request that the jury be required to determine certain questions of fact, there is a waiver of the right to trial by jury, and the court is constituted a trier of all questions of law and facts. There is an extensive annotation on this question in 18 A. L. R. 1433, supplemented in 69 A. L. R. 633; to the same effect see, also, 26 R. C. L., sec. 83, p. 1080; 64 C. J., p. 434; 2 Bancroft's Code Pr. & Rem., sec. 1446, p. 1913; *Bank of Commerce* v. *United States F. & G. Co.,* 58 Mont. 236, 194 Pac. 158; *Moore* v. *Crittenden,* 62 Mont. 309, 204 Pac. 1035; *Midland Motor Co.* v. *Norwich Union Fire Ins. Soc.,* 72 Mont. 583, 593, 234 Pac. 482.

Defendant argues that the express reservation of its right to go to the jury, made at the time of its motion for directed verdict, preserved that right in the event of an adverse ruling. In support of that contention *Mack Co.* v. *Ryan,* 80 Mont. 524, 261 Pac. 283, *Stiemke* v. *Jankovich,* 72 Mont. 363, 233 Pac. 904, and *Fifty Associates Co.* v. *Quigley,* supra, are cited. It will be noted, however, that in those cases it is indicated that such a reservation must specifically point out certain fact issues which it is desired to have the jury pass upon notwithstanding the mo-

tion. This point is not of persuasive effect here, as will hereinafter appear.

The action of counsel in thus submitting the matter was not binding upon the trial court, if it deemed the evidence upon a vital question in conflict and if it preferred the jury's judgment by way of a special finding upon the question in dispute, or preferred to have the jury return a general verdict in the cause. (*Mack Co.* v. *Ryan,* supra; *Hollingsworth* v. *Ruckman,* 72 Mont. 147, 232 Pac. 180.)

Defendant's motion for an instructed verdict challenged the legal sufficiency of all of the evidence. It was somewhat in the nature of a demurrer to the evidence or a motion for nonsuit. (See 2 Bancroft's Code Pr. & Rem., sec. 1449, p. 1917; *Maki* v. *Murray Hospital,* 91 Mont. 251, 256, 7 Pac. (2d) 228; compare *McKay* v. *Montana Union Ry. Co.,* 13 Mont. 15, 31 Pac. 999.)

We hold that, both parties having made motions for instructed verdicts, the cause was for final decision by the court on both the law and the facts.

The important question for decision was with relation to the agent's or manager's authority to execute the contract on behalf of the corporation and thereby bind it to the fulfillment thereof. The court's direction to the jury to find in favor of the plaintiff in effect declared that that authority had been shown and existed. Resort to the record is then necessary to ascertain just what authority Day really had in the premises. Plaintiff apparently recognized the fact that the contract was one that would ordinarily fall within the inhibition of the statute of frauds. (Sec. 7519, subd. 1, Rev. Codes.) The agent's authority was not in writing. (See sec. 7939, Id.; *Seymour* v. *Oelrichs,* 156 Cal. 782, 106 Pac. 88, 134 Am. St. Rep. 154.)

Here the contract was in writing, but no evidence was introduced showing written authority of Day to enter into it. Plaintiff sought to avoid the effect of the latter requirement, the absence of written authority, by virtue of the asserted fact that the "manager" was something more than an agent; in other words, that he was a managing official or managing agent of

the corporation, that his act was the act of the corporation, and that it was therefore bound by his action. If this contention were borne out by the record, then we would agree that specific written authority to enter into the agreement, or any agreement of that nature, was not necessary. The controlling question is: Does the evidence sustain such contention?

The only parol evidence in the record with regard to the scope of the manager's authority was that of Rockwood Brown, president of the defendant corporation, who was called as a witness for the plaintiff. On direct examination he testified that Day was one of the incorporators along with himself and Mr. Davis, counsel for defendant. Plaintiff's counsel asked him if Day was manager, and he replied that he was. He was then cross-examined by defendant's counsel and stated that Day's authority as manager was limited. Objection was made to this answer, and the court instructed the witness to tell the facts rather than to give his impressions. The witness then stated, with relation to Day's authority as manager: ''As to what his duties were in connection with the corporation's business, he sold gasoline, had a little gasoline station there and had these few cabins for tourists; he looked after them. Yes, he operated the El Campo No. 1.'' That was the only oral testimony in the entire record bearing on the authority of Day as manager or agent. The fact that the authority was limited was brought out on cross-examination; this makes no difference. He was still plaintiff's witness, and his testimony on cross-examination was a part of plaintiff's case. (*Cook* v. *MacGinniss*, 72 Mont. 280, 304, 233 Pac. 129.)

The only additional evidence in the record with regard to the management of the corporation was a copy of the articles of incorporation of El Campo, Inc., which was introduced by the plaintiff. Objection was made by defendant's counsel to the introduction of the articles on the ground that the incorporation of defendant was already admitted. Plaintiff's counsel stated that the articles were offered for the purpose of showing Mr. Day's connection with the corporation, and also the powers of the corporation. The articles were admitted. They disclosed

that the company was incorporated by Brown, Davis and Day, and that it was authorized and empowered to conduct a wide range of activities, including the operation of restaurants, taverns, tourist camps, places of entertainment, and filling stations; that it could purchase and sell groceries and food supplies and deal in real estate, and do many other things not necessary to enumerate here. By the terms of the articles the three incorporators were expressly made the board of directors for the first 3 months. The contract in controversy came into existence during that 3-month period.

The articles also provided: "The business of this corporation shall be conducted by a board of three directors, elected from among the stockholders, who shall have all the powers usually exercised by such bodies and as conferred by law, and shall in addition have the power * * * to make contracts for and to purchase property, * * * to borrow money and execute on behalf of the company, or direct the execution of such evidences of indebtedness and security, as may be required or deemed advisable, * * * and to make and adopt by-laws for the government of the company."

From these excerpts it is clear that the management of the company was vested in the directors until such time as, by a by-law or other designation, officers or agents were authorized for the purpose. This power was reposed in the board of directors, not in any one of the members. Such authority having been vested in the board as such, and not in any one of the members thereof, the same conditions that obtain in relation to public boards prevailed, at least until the board had authorized some other mode of procedure in conformity with the statutes, or an authorized by-law. For a discussion of this rule as applicable to public or governmental boards, see *State ex rel. Matson* v. *O'Hern*, 104 Mont. 126, 65 Pac. (2d) 619, and cases there cited. By analogy, the same legal principles are applicable and binding as to the authority of Day to act for the corporation because he was a member of the board of directors, unless he had been authorized so to do by an appropriate by-law or other designation.

394

We are not unmindful of the fact that the business of a corporation is usually transacted and carried on by its officers and agents. Likewise, in this instance, we appreciate the fact that the effect of the limitations of power set out in the articles of incorporation might have been lost in the operation of the business if agents were in effect clothed with apparent, implied, actual, or ostensible authority to do certain things. This might be true of a corporation, just as it is often true of individuals. Both instances are governed by the general law of agency. (7 R. C. L., sec. 616, p. 620; *Trent* v. *Sherlock,* 24 Mont. 255, 61 Pac. 650.) But here the record contains no evidence for the application of such rules. Not one item of evidence discloses that other similar transactions were ever entered into or performed by Day as a representative of the company. There is not a suggestion that the corporation might have ratified his action in this matter; but, on the contrary, the record indicates that the contract was repudiated immediately because no payments were ever made other than the down payment made by Day.

It is conceded that an agent clothed with authority of the management of a corporation's business may enter into contracts which are usual, proper, or necessary to be made in the ordinary transaction of the company's business. But where a contract is not of this nature, and not within the scope of the manager's ordinary authority, the corporation cannot be bound in the absence of a showing of ratification or estoppel. (See 14A C. J., sec. 2275, p. 424, and sec. 2299, p. 445 of the same text; 7 R. C. L., sec. 616, p. 620; 6 Cal. Jur., sec. 281, pp. 1109 et seq.; *Trent* v. *Sherlock,* supra; 2 Fletcher's Encyclopedia on Corporations, sec. 671, p. 618; 3 Thompson on Corporations, 3d ed., sec. 1691, p. 210 et seq.)

The contract here under consideration was not an ordinary one; nor can it be said that it was one which might ordinarily arise in the conduct of such a business. It must be recalled that the testimony of Brown, the only witness for the plaintiff with relation to the authority of Day, was to the effect that Day only had authority to sell gasoline and other supplies, and look

after the tourist camp. There was nothing said in his testimony about the right of Day to order and purchase any supplies. The record is entirely silent as to the manner of securing supplies, by whom they were ordered or bought, or how they came into the possession of the corporation. Such a record is not sufficient to justify the execution of such a contract as that here under consideration. This contract involved the expenditure of several hundred dollars. It incurred an indebtedness running over a period of 3 years, and which in the end could not result in the ownership of the sign by the user. We can only conclude from the whole record here that this type of contract must obviously have been the kind contemplated in the articles of incorporation and intended to be within the powers of the board of directors in the absence of any showing to the contrary.

In the final analysis we must hold that the case, having been submitted to the court by motions for directed verdict tendered by both sides, was submitted for all purposes and for a final decision on the merits. After a discussion of the effect of a motion for directed verdict by both parties, the author in 26 Ruling Case Law, section 83, at page 1081, concludes with the following pertinent statement which we think is applicable here: "Where the case has been decided after such a motion by both parties the decision of the court has the same effect as a verdict of a jury, and the only question left for review is whether there is any substantial evidence to support the decision and whether the law was correctly applied."

The decisive question presented for review by this court is whether the plaintiff made a case upon the law and the facts sufficient to sustain the judgment. (*Bank of Commerce* v. *United States F. & G. Co.*, supra.) It is our opinion that such a case was not made; this because there was no sufficient showing of the authority of Day to avoid the effect of the statute requiring an agent's authority to be in writing in conformity with section 7939, supra. The case having been submitted in the manner hereinbefore described, it becomes our duty, after a re-

view of the record, to decide whether or not there was any evidence therein sufficient to warrant the trial court to direct a decision of the matter in favor of the plaintiff. As we have indicated, we do not believe that there was any substantial evidence of the necessary authority. Such being our view, the other assignments of error become unimportant and unnecessary for a determination of the appeal. The judgment of the district court should have been in favor of defendant.

The judgment is reversed, with direction to enter judgment for defendant.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.