60 459
91 184

Inman v. C., M. & St. P. R. Co.

1. **Railroads: INJURY TO STOCK RUNNING AT LARGE: RUNAWAY TEAM.** A team of horses which are harnessed to a wagon, and which have escaped from the control of their owner, is included under the term "live stock running at large," as used in section 1289 of the Code; and under that section, a railway company whose train ran upon and injured a team so running at large, at a place where it had the right to fence its track, is liable to the owner for his damages.

2. ———: ———: NEGLIGENCE OF OWNER. The mere *negligence* of the owner in such a case will not defeat his recovery. The statute provides that the company shall be liable unless the damage was caused by the *willful act* of the owner or his agent.

*Appeal from Lyon District Court.*

THURSDAY, MARCH 22.

THIS is an action to recover double the value of a horse killed by a train on defendant's road. The cause was tried to the court, and judgment was rendered in favor of plaintiff for two hundred dollars. The defendant appeals. The facts are stated in the opinion.

*Geo. E. Clarke* and *M. B. Cary,* for appellant.

*Allen & Schee,* for appellee.

DAY, CH., J.—The cause was submitted to the court below upon the following agreed statement of facts:

"1st. That the defendant is a railway corporation duly organized, owning and operating a railway extending across the State of Iowa, in a westerly direction from McGregor, Iowa, to Canton, D. T., and having a station called Hartley, in O'Brien county, through which said railway runs.

"2d. That on the third day of November, 1879, at about 7.30 P. M. of said day, it being then dark, the team mentioned and described in plaintiff's petition on file herein was hitched to a coal shed on the depot grounds at Hartley, situated on the north side of the main track, about fifty feet from said track, and three rods west of said depot—the defendant's passenger train being then at said depot, and about to go west, and one of its freight trains on the side track, bound east. The noise of said trains, made in their moving, frightened said team so it broke loose from where it was hitched, and it ran first north, passing off the right-of-way, then, making a circle or curve, came round on the defendant's line of railway, about two miles east of the Hartley depot—the defendant having the right to fence its right-of-way at said point, but having failed to do so. At the time said team broke loose, A. H. Wilbur, who had charge of the same and was using it on

said day, had left it hitched, as above stated, and gone to the depot for a package there, belonging to him. The freight train above referred to, having left defendant's depot, running east, came up to said team about two miles east of said depot on its said railway, and struck the same, killing one horse, of the value of one hundred dollars, breaking and injuring the wagon and harness, damaging the same to the amount of forty dollars. At the time the engineer in charge of said train first discovered said team on the railway, the engine was about one hundred and fifty feet from the team. He was running a stock train under special orders, at the rate of twenty miles per hour, was on a down grade, and it was not possible to stop or slacken the speed of the train from the time of seeing the said team until the same was struck and injured as above stated.

"On the 6th day of January, 1880, the plaintiff served on the defendant the notice and affidavit hereto annexed. * *.

"At the time the team broke loose and started away from the depot, the said freight train had not left the depot. The train was going east on the railway track, and from the point where said team came on the railway to the place where the same was struck, was two hundred and twelve rods."

I. Section 1289 of the Code, provides: "Any corporation operating a railway, that fails to fence the same against live stock running at large, at all points where such right to fence exists, shall be liable to the owner of any such stock, injured or killed by the reason of the want of such fence, for the value of the property or the damage caused, unless the same was occasioned by the willful act of the owner or his agent." The appellant insists that the horses in question, harnessed and hitched to a wagon, and thus constituting a team, do not come under the designation of live stock. The word *stock*, as employed in agriculture, means, according to Webster, domestic animals or beasts collected, used or raised on a farm; as a stock of cattle or of sheep—called also live stock. Now, whilst it may be admitted that the term *stock* does not em-

brace the idea of a team, it cannot, nevertheless, be denied that the term *team* embraces the idea of live stock. The word *team* means two or more horses, oxen or other beasts, harnessed together to the same vehicle for driving. A team, therefore, is composed of live stock, and cannot exist without it. It would be exceedingly technical to hold that two horses, when harnessed and hitched together to a wagon, cease to fall under the designation of live stock.

II. The appellant further insists that the team was not running at large, as contemplated in the statute. In *Welsh v. The C., B. & Q. R'y Co.*, 53 Iowa, 632, it was held that the jury was warranted in finding that a horse was running at large which had on a bridle with the rein over his head, and a halter rope which was untied and dragging. In that case an instruction, as follows, was approved: The words, "running at large," as used in the statute, import that the stock are not under the control of the owners; that they are not confined by enclosures to a certain field or place, nor under the immediate care of a shepherd or herdsman; that they are left to roam wherever they may go. But where an animal escapes from the control of the owner, and cannot be caught by the owner, then such animal would be running at large within the meaning of the statute." We are content with the doctrine announced in the foregoing case. Under it there can be no doubt that the horse in question in this case was running at large when it received the injury complained of.

III. It is insisted that the agreed facts show that plaintiff's own contributory negligence caused the injury. The statute renders the company liable for all injuries sustained by reason of a failure to fence, unless occasioned by the willful act of the owner or his agent. Code, § 1289. Mere negligence upon the part of the owner does not defeat his recovery under the statute. See Millers Code, § 1289, note 1. The record discloses no error.

AFFIRMED.