GRANIER, APPELLANT, *v.* CHAGNON, RESPONDENT.

No. 8829

Submitted January 11, 1949. Decided March 10, 1949.

203 Pac. (2d) 982

328

Mr. Jess L. Angstman, of Havre, for appellant. Mr. Angstman argued the cause orally.

Messrs. Burns & Thomas, of Chinook, for respondent. Mr. Burns argued the cause orally.

MR. CHIEF JUSTICE ADAIR:

Action for damages. Judgment for defendant. Plaintiff appealed.

Jerry V. Waldwinkel was of noble lineage. The blood of five generations of natural hunters coursed his veins. When but ten months old he journeyed west. He settled in the county of Hill county, in the state of Montana.

First he lived in Havre. About the first part of May 1947 he left the noise and bustle of that busy city behind him and went to live at the quiet country home of Ira Holsapple, situate six

miles north of Havre, on the Wild Horse Trail. There he made his home until the afternoon of June 8, 1947.

During all his days Jerry V. Waldwinkel led a dog's life, for, be it remembered, Jerry V. Waldwinkel was a large, dark brown, registered, thorough-bred German short-haired pointer, with a long pedigree and a short tail. His recorded ancestry carried back to one Rap von Schwarenberg, reputed to have been at one time a national field trial champion. Jerry V. Waldwinkel, aged twenty-one months and weighing sixty pounds, spent his first five days at the Holsapple home tethered to a chain in Mr. Holsapple's granary. Thereafter he was released at times and permitted to run at large.

On the Wild Horse Trail, there lived a rancher, L. N. Hamblock, a grower of pure-bred beef and milking Shorthorn cattle. Mr. Hamblock and Mr. Holsapple were neighbors, their respective dwellings being but about two blocks apart.

Shortly after Jerry V. Waldwinkel moved into the neighborhood, Jerry accompanied by a small, short-haired terrier, belonging to one John Landskov, were discovered in Mr. Hamblock's pasture chasing Hamblock's pure-bred cows, then heavy with calf. Such fact Mr. Hamblock promptly reported to Jerry's keeper, Mr. Holsapple, with the warning that he had better keep his dog up or it would be destroyed.

Upon being asked, on the witness stand, to relate what Mr. Hamblock told him, Mr. Holsapple testified: "There had been some dogs around in the evening, been bothering and chasing this livestock, and on account of that,—then I went to work in the evening,—I used to put Jerry on a chain and chained him in the garage, and he told me that he was going to have to do something about these dogs that were bothering his livestock and that is why Jerry was in the garage on a chain."

Mr. Hamblock testified: "The dog, and also the Landskov dog, had been after my cattle in the south pasture, and these cows are pretty expensive cows and they were calving, and they had been chasing the cows and they bunched them up over at the corral and I shot [at] them—shot at the dogs twice, two different times,

and I meant to kill them, and I went down and told him he had better keep his dog up, because the next time I was going to kill the dog.

"Q. This Landskov, what kind of a dog was it? A. It was a short-haired dog, weighed about twenty pounds, like a fox terrier something like that; I am not sure.

"Q. And did you see these two dogs chase your cattle? A. I and my wife both saw them.

"Q. How many times, Mr. Hamblock? A. Three times.

"Q. Did you shoot at them with a rifle? A. A twenty-two special.

"Q. And missed them? A. And missed them, yes, sir. * * *

"Q. Did you at any time see this dog ranging out a considerable distance from the Holsapple home? A. Yes, sir, I did.

"Q. How far? A. Three miles.

"Q. What direction? A. It was northwest from the home ranch.

"Q. Was it just the once that you saw him out there? A. No, it was two or three times.

"Q. Was he alone? A. No, the Landskov dog was with him.

"Q. Just the two of them? A. Just the two dogs."

Leon Chagnon occupied and operated a farm situate four miles distant from the Holsapple home. His two sons,—William, aged twenty-nine years, and Paul, somewhat younger,—assisted in operating the farm whereon Chagnon kept a flock of sheep, which he owned, numbering more than two hundred head.

During the latter part of May and the first part of June 1947, the flock was set upon by unidentified marauders and sixteen to eighteen head of Chagnon's sheep were killed.

To protect the flock against further raids and loss, William Chagnon became on the alert for the killers. On June 6th, 1947, he drove the flock to a hill in the Chagnon pasture. There, from a point of vantage on the hilltop, he observed two dogs coming towards the sheep. When about a half mile away the dogs stopped. Apparently they had discovered William's presence for they came no nearer to the sheep that day. At that distance

William was neither able to identify the dogs nor to obtain an accurate description of them.

Two days later, to-wit, on Sunday afternoon, June 8, 1947, at about 2 o'clock, the Chagnon sheep suddenly ''came running off the hill like something was bothering them,'' and they ''bunched up'' by the Chagnon barn. One sheep had been seriously wounded and injured.

William Chagnon testified: ''I found one that was all tore up. Its face was practically tore off and she was ripped in the belly. She was an old sheep, a ewe.''

Immediately upon observing the commotion among the sheep, William and Paul Chagnon grabbed their guns and, accompanied by Stuart Snyder, hurriedly climbed into an automobile and hastened up the hill in the direction from whence the sheep had come. On reaching the brow of the hill they beheld two dogs in the coulee below. The dogs were in the Chagnon pasture about a quarter of a mile from the Chagnon house and barn. Both dogs were on a freshly killed sheep.

William Chagnon testified: ''They were on their feet and they were tearing at the sheep. They were both busy and they didn't notice us as we first drove up.''

The automobile was stopped about thirty yards short of where the two dogs were so engaged. As the occupants were stepping from the car, they were first noticed by the dogs. Thereupon the dogs turned tail to flee the scene.

One, a large, dark brown dog with a short tail, on leaving the sheep on which he had been working, was shot and killed as he started up the hill.

The other dog, a small, yellow spotted fox terrier, kept along the bottom of the coulee well out of gunshot range, running to the John Landskov home about a half mile distant, closely pursued by the Chagnon brothers and Snyder.

The terrier belonged to Mr. Landskov. When informed of the bloody business in which it had been engaged, Mr. Landskov surrendered the terrier and consented that it be killed, and this was promptly done.

The Chagnon brothers and Snyder thereupon and immediately returned to the sheep on which the dogs had been tearing and chewing. The sheep was found to be a ewe belonging to Leon Chagnon. She had been torn on her side, back, head and neck. Her wounds were fresh. She was then dead, but so recently had she been killed that she was still bleeding and warm.

The large, dark brown dog with a short tail that had been slain was identified as Jerry V. Waldwinkel.

Ira Holsapple, the dog's keeper, testified:

"Q. (By Mr. Angstman) When did you first miss the dog out at the ranch? * * * A. Well, I missed him the morning of the 9th.

"Q. Where did this dog stay out at the ranch where you lived? A. I kept him in a granary on a chain.

"Q. How did he get loose from the chain, if you know? A. I turned him loose Sunday morning, fed him and turned him loose, because I thought as long as I was going to be up there I would turn him loose. I turned him loose and he was around the yard there. That was why I turned him loose.

"Q. Was that on the 8th of June? A. Yes, that was on Sunday; I guess that was on the 8th of June.

"Q. When did you next see the dog? A. Up in that coulee dead."

This is an action brought by Frank Granier, the owner of Jerry V. Waldwinkel, wherein he seeks to recover from the defendant, William Chagnon, $2,000 damages ($500 actual plus $1,500 exemplary) for the alleged wanton and malicious killing of plaintiff's dog. By answer defendant admitted that he killed the dog, but denied that he acted either wantonly or maliciously, and, as justification, pleaded that he had caught the dog in his father's pasture in the act of chewing and working over a newly killed sheep belonging to defendant's father.

A jury was impaneled to try the case. Various witnesses were sworn and examined. Four witnesses testified on behalf of the plaintiff and five on behalf of the defendant. At the close of all the testimony and after both plaintiff and defendant had rested.

plaintiff moved the court for a directed verdict. Before the court had ruled upon such motion, the defendant moved for a directed verdict in his favor. Thereafter neither party either requested or suggested that any question or issue in the case be submitted to the jury. With both motions before it, submitted but undetermined, the trial court then inquired of defendant's counsel, Mr. Burns, and of plaintiff's counsel, Mr. Angstman, if either had anything more to say.

. The record of the proceedings at this stage of the trial is as follows:

"The Court: (To Mr. Burns) Have you anything more to say? ·Or Mr. Angstman, have you anything more to say? Are you still standing on your motion?

"Mr. Angstman: Yes, I still stand on it.

"The Court: You still urge your motion?

"Mr. Angstman: Yes.

"The Court: Well, under those circumstances, according to Montana law, apparently there is nothing for me to do except to decide this matter right now, and the motion of the defendant will be granted.

"Mr. Angstman: And may we have sixty days in addition to the statutory time in which to prepare, serve, and file bill of exceptions?

"The Court: Yes, you may. Just a second. Do you have your verdict ready?

"Mr. Burns: I have a verdict ready, but I will have to draw a judgment on this, your Honor.

"The Court: Well, we want a verdict signed by the jury. You asked for a directed verdict.

"Mr. Burns: Yes, I have a verdict.

"The Court: We will bring in the jury and have it signed. Call in the jury. (Whereupon the jury was brought into Court by the bailiffs.) In this case, both sides have made a motion for a directed verdict and placed the matter squarely in the lap of the Court, rather than the ultimate decision of the jury, and the Court has granted the motion of the defendant for a directed

verdict, and the Court does direct a verdict for the defendant against the plaintiff, and it remains only for one of your number to sign the verdict. Mr. Wigmore, will you step over here and sign the verdict? Thereupon the following verdict was signed, filed and entered in this cause:

"(Title of Court and Cause)

"Verdict

"We, the, Jury in the above entitled action find the issues herein in favor the defendant and against the plaintiff. Dated this 17th day of March, 1948. L. B. Wigmore, Foreman.

"Mr. Angstman: I take it, your Honor that our sixty days—

"The Court: You have sixty days in addition, yes."

From the judgment entered on such verdict plaintiff has appealed.

Rulings on Motions for Directed Verdict. Plaintiff specifies error in denying plaintiff's motion for a directed verdict and in granting that of defendant.

The complaint charges that "the defendant wantonly and maliciously shot and killed * * * a hunting dog * * * the property of plaintiff of the value of Five Hundred Dollars ($500.00) to plaintiff's damage in the sum of Five Hundred Dollars ($500.00)" and that, "because of the violent, wanton and malicious acts of defendant * * * he should be required to pay additional damages by way of example" in the sum of $1,500. In his answer defendant admitted the killing of the dog, but denied that he acted either wantonly or maliciously and pleaded justification under the facts and the law.

There is much substantial evidence to support the defense that ▮ under the circumstances and the statute (3417.15) the defendant was justified in destroying the dog. But the evidence fails to establish that the defendant acted either "wantonly" or "maliciously" as is alleged in the complaint, and the trial court properly denied plaintiff's motion for a directed verdict.

It has long been the well-established rule in this jurisdiction ▮▮ that, where, as here, plaintiff and defendant both move for a peremptory instruction directing a verdict and do nothing

more, each party thereby waives a trial by jury and submits to the trial judge the question whether, as a matter of law, a verdict should be directed for the plaintiff or for the defendant. Under such circumstances the findings and judgment of the trial court are conclusive on appeal if there is substantial evidence to support the same. Stoltze Land Co. v. Westberg, 63 Mont. 38, 43, 206 Pac. 407, 408. Compare: Electrical Products Consolidated v. El Campo, Inc., 105 Mont. 386, 390, 73 Pac. (2d) 199, 201, 202; Exchange State Bank v. Occident Elevator Co., 95 Mont. 78, 85, 24 Pac. (2d) 126, 128, 90 A. L. R. 740; Olsen v. Zappone, 83 Mont. 573, 580, 273 Pac. 635; Harvey E. Mack Co. v. Ryan, 80 Mont. 524, 533, 261 Pac. 283; Anderson v. Border, 75 Mont. 516, 524, 244 Pac. 494; Midland Motor Co. v. Norwich Union Fire Ins. Soc. Ltd., 72 Mont. 583, 593, 234 Pac. 482; Stiemke v. Jankovich et al., 72 Mont. 363, 370, 233 Pac. 904; General Fire Extinguisher Co. v. Northwestern Auto Supply Co., 65 Mont. 371, 389, 211 Pac. 308; Moore et al, v. Crittenden et al., 62 Mont. 309, 311, 204 Pac. 1035; Bank of Commerce v. United States Fidelity & Guaranty Co., 58 Mont. 236, 242, 194 Pac. 158; Fifty Associates Co. v. Quigley, 56 Mont. 348, 352, 185 Pac. 155; Carpenter v. Nelson, 43 Mont. 566, 118 Pac. 272.

The foregoing rule, known as the majority rule, is in harmony with the provisions of our statute, sec. 9364, R. C. M. 1935; Moore v. Crittenden, supra; Electrical Products Consolidated v. El Campo, Inc., supra, and is the rule which obtains in the federal courts. See: Fireman's Fund Indemnity Co. v. Kennedy, 9 Cir., 97 F. (2d) 882, 890, and Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393, 57 S. Ct. 809, 811, 81 L. Ed. 1177.

Section 9325, R. C. M. 1935, provides: "An issue of law must be tried by the court, unless it is referred upon consent."

Section 9364, R. C. M. 1935, provides: "Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto." In Moore et al. v. Crittenden, supra, this court, after quoting the statute (9364) said: "This section does not state any new or strange doctrine. The rule announced

is recognized by the authorities everywhere, even in the absence of statute. (Citing authorities.) The decision in each of the cases cited above is in entire harmony with the rule of the statute and is so recognized by the overwhelming weight of authority.''

The annotations in 18 A. L. R. 1433-1460, to Manska v. San Benito Land Co., 191 Iowa 1284, 184 N. W. 345, 18 A. L. R. 1430, list the court decisions following each rule. The majority rule is stated thus (18 A. L. R. 1433): ''In a majority of the jurisdictions wherein the question has arisen, it has been held that where each of the parties to an action requests the court to direct a verdict in his favor, and makes no request that the jury shall be allowed to determine any question of fact, the parties will be presumed to have waived the right to a trial by jury, and to have constituted the court a trier of questions both of law and of fact.'' For more recent decisions see: Annotations in 69 A. L. R. at pages 634-639, and in 108 A. L. R. at pages 1315-1335. Also see National City Bank of Cleveland v. Jones, 1948, 149 Neb. 844, 32 N. W. (2d) 755, 757; Stallings v. Britt, Ga. Sup. 1948, 49 S. E. (2d) 517, 519; Cortiana v. France, 1948, 212 Ark. 930, 208 S. W. (2d) 436, 438; Foudy v. Daugherty, Ind. App. 1947, 76 N. E. (2d) 268; Lawrence v. Gladitsch, 179 Or. 111, 169 Pac. (2d) 877; City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 168 Pac. (2d) 245, 246.

By their respective motions did both plaintiff and defendant constitute the trial court the trier of questions both of law and of fact. Secs. 9325 and 9864, R. C. M. 1935.

The statute. Section 3417.15, R. C. M. 1935, provides: ''Any dog, whether licensed or not, which, while off the premises owned or under control of its owner, shall kill, wound or injure any livestock not belonging to the master of such dog, shall be deemed to be a public nuisance and may be killed forthwith by any person, or the owner, when notified, shall kill such dog within twenty-four (24) hours and if he fails to do so an officer may be notified and shall kill or cause to be killed such dog; provided, that nothing contained herein shall apply to any dog acting

under the direction of its master, or the agents or employees of such master."

The Evidence. Under the circumstances here shown, the findings and judgment of the trial court are conclusive on this appeal, if there is substantial evidence to support the same.

Plaintiff's brief concedes that there is evidence in the record which indicates that Chagnon's ewe whereon the dogs were discovered working and eating had been freshly killed, but says plaintiff: "No one had seen the sheep killed, wounded, or injured." Plaintiff contends that in the absence of an eyewitness to the actual injuring, wounding or killing that "there is no evidence that the two dogs killed it * * * so that it would be merely conjecture to say the dogs had killed, wounded, or injured any livestock." With this contention we cannot agree.

The law of evidence does not require demonstration or such ■■ degree of proof as, excluding possibility of error, produces absolute certainty. Such proof is rarely possible. Satisfactory evidence satisfies the law, being such proof as ordinarily produces conviction in an unprejudiced mind. To justify his act in destroying the dogs, defendant was not required to produce the direct testimony of eyewitnesses to the actual killing of the sheep. Indirect evidence suffices including the reasonable appearance of things and the reasonable inferences and deductions to be made from the other facts proven. Williams v. Brownfield-Canty Carpet Co., et al., 95 Mont. 364, 370, 26 Pac. (2d) 980; Exchange State Bank v. Occident Elevator Co., 95 Mont. 78, 87, 24 Pac. (2d) 126, 90 A. L. R. 740.

The evidence shows: That, while miles off the premises of its ■ owner or keeper, plaintiff's dog was caught, red-footed and red-fanged, in Leon Chagnon's sheep pasture, tearing and chewing on one of Chagnon's ewes still bleeding and warm, and that another of Chagnon's sheep,—her belly ripped—her face practically torn off,—had just escaped a like fate by running to the barn with the remainder of the flock. Loss of some sixteen or eighteen sheep to unidentified raiders had most recently been suffered, and defendant was authorized to act forthwith on what

he witnessed in the Chagnon sheep pasture on the afternoon of June 8, 1947. The law accords him "the right to act on the reasonable appearance of things." 3 C. J. S., animals, sec. 219, at page 1336, note 18, quoted with approval in Trenka v. Moos, 118 Mont. 607, 613, 614, 168 Pac. (2d) 837, 841, 842.

The damning evidence supplied by the witnesses for both parties produces conviction in unprejudiced minds and compels the conclusion that Jerry V. Waldwinkel had become a sheep-killing dog. By express statute such dog is "deemed to be a public nuisance and may be killed forthwith by any person." Section 3417.15. Having become a destroyer of livestock and a menace to the public, the statute authorizes the destroyer's destruction, and in view of the motions made and the evidence before it, the trial court was warranted in directing a verdict for defendant.

Trenka's Case. Plaintiff asserts that he instituted and prosecuted his action on the theory promulgated in the decision in the case of Trenka v. Moos, supra. Trenka's Case is readily distinguishable from the case at bar.

Trenka's Case was decided under the rule of the common law and not under the provisions of section 3417.15, R. C. M. 1935, the opinion expressly stating that "the provisions of that statute [3417.15] have not been considered in arriving at our decision."

In Trenka's Case there were no motions for a directed verdict made by the respective parties at the close of all the evidence as here. Because of prejudicial errors committed by the trial court in its rulings on objections made to the introduction of material evidence and because of prejudicial errors in the court's instructions to the jury, the judgment in Trenka's Case was reversed and the cause remanded for a new trial.

In the case at bar the property in peril was "livestock," expressly sought to be protected by the provisions of section 3417.15, R. C. M., while in Trenka's Case the property in peril was poultry—chickens—not covered by the provisions of section 3417.15, R. C. M.

"Livestock" as employed in section 3417.15, R. C. M., supra, means domestic animals or beasts generally collected, used

or raised on a farm or ranch as cattle, sheep, swine, goats, horses, mules, donkeys, etc. Compare Howard & Herrin v. Nashville, C. & St. L. R. Co., 153 Tenn. 649, 284 S. W. 894, 896, 46 A. L. R. 1530, 1533; Hapeman v. Citizens' Mut. Fire Ins. Co., 126 Mich. 191, 85 N. W. 454, 86 Am. St. Rep. 535; Lee County Sav. Bank v. Snodgrass Bros., 182 Iowa 1387, 166 N. W. 680; Inman v. Chicago, M. & St. P. R. Co., 60 Iowa 459, 15 N. W. 286, 287; Lee v. Minneapolis & St. L. Ry. Co., 66 Iowa 131, 23 N. W. 299; Mathews v. State, 39 Tex. Cr. R. 553, 47 S. W. 647, 48 S. W. 189, but the term does not include dogs, Howard & Herrin v. Nashville, C. & St. L. R. Co., supra; Henderson v. Lancaster & Wallace, 2 La. App. 680, 683, or geese, James v. Atlantic Coast Line R. Co., 166 N. C. 572, 82 S. E. 1026, 1027, L. R. A. 1915B, 163, Ann. Cas. 1915B, 470, or turkeys, Addison v. Norfolk Southern R. Co., 190 N. C. 849, 129 S. E. 156, or other domestic fowls, The Matilda A. Lewis, 16 Fed. Cas. No. 9,281, pages 1108, 1109.

Common Law Rule. The common law rule governing the right of the owner of domestic fowls to kill a dog found attacking and imminently menacing their safety is correctly set forth in 3 C. J. S., Animals, sec. 219, at page 1336, notes 14-21, quoted with approval in this court's decision in Trenka's case, supra, 118 Mont. 607, at pages 613, 614, 168 Pac. (2d) 837, at pages 840, 841. See also Janson v. Brown, 1 Campb. 41, 42; Livermore v. Batchelder, 141 Mass. 179, 5 N. E. 275; Marshall v. Blackshire, 44 Iowa 475; State v. Smith & Cauley, 156 N. C. 628, 72 S. E. 321, 36 L. R. A., N. S. 910; O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430; Leonard v. Wilkins, 1812, 9 Johns, N. Y. 233; Ex parte Minor, 203 Ala. 481, 83 So. 475, 10 A. L. R. 687, and annotation at pages 689-697.

The degree of the imminence of danger to chickens to justify the killing of a chicken-stealing dog and the degree of the imminence of danger to sheep from a sheep-stealing dog are not the same.

From time immemorial, the law has recognized the right of the master of the flock to kill a sheep-killing dog caught in the commission of the act.

"It hath been always taken for the law, and universal usage is high evidence of the law, that a sheep-stealing dog, found lurking about, or roaming over a man's premises where sheep are kept, incurs the penalty of death." Parrott v. Hartsfield, 1838, 4 Dev. & B., N. C., 242, 32 Am. Dec. 673, 674.

In the monographic note to Hamby v. Samson, 105 Iowa 112, 74 N. W. 918, 40 L. R. A. 508, 67 Am. St. Rep. 285, at page 295, it is stated: "Sheep raisers are especially subject to loss and annoyance from the predatory and wolfish instincts of dogs, and statutes have been quite generally enacted by states, in the exercise of their police power, to obviate such nuisance. In the absence of such statutes, however, the right of a person to defend his sheep from dogs, even to the extent of killing the dogs, is unquestioned. * * * It is not necessary that the dog be caught in the act of killing * * *" (Citing cases).

2 Am. Jur., Animals, sec. 129, page 790, says that: "* * * it has always been held that a sheep-stealing dog found lurking about, or roaming over, a man's premises where sheep are kept incurs the penalty of death." To like effect see the text in 3 C. J. S., Animals, sec. 219, at page 1337, notes 24-28.

Rulings on Evidence. Plaintiff specifies as error two rulings of the trial court, excluding certain testimony respecting the value of plaintiff's dog. Such testimony would have been important only in assessing plaintiff's damages in the event the court or jury found for the plaintiff. Here, however, where the court granted defendant's motion for a directed verdict, the value of the dog became wholly unimportant and prejudicial error may not be predicated upon the exclusion of the offered testimony. Compare Quinlivan v. Brown Oil Co. et al., 96 Mont. 147, 29 Pac. (2d) 374; Anderson v. Border et al., 75 Mont. 516, 244 Pac. 494.

The statute applies to "Any dog" of whatever value not acting under the direction of its master or the agents or employees of such master that, "while off the premises owned or under control of its owner, shall kill, wound or injure any livestock not belonging to the master of such dog." Section 3417.15.

It matters not whether the sheep-stealing dog be a patrician or a plebian dog. Each suffers the same fate.

No prejudicial error appearing and there being substantial evidence sustaining the verdict for defendant, the judgment entered on such verdict is affirmed.

Associate Justices Freebourn and the Honorable W. R. Flachsenhar, District Judge sitting in place of Mr. Justice Bottomly, disqualified, concur.

MR. JUSTICE ANGSTMAN:

I concur in the result in the foregoing opinion solely upon the ground of stare decisis. I do not agree that a trial by jury is waived where both parties to an action move for a directed verdict.

The right of trial by jury is inviolable but it may be waived "by consent of the parties expressed in such manner as the law may prescribe." Mont. Const., art. III, sec. 23. And so far as applicable here the law prescribes that a jury may be waived: "1. By consent of parties entered in the docket; * * *." Sec. 9676, R. C. M. 1935.

Just when does the party first moving for a directed verdict consent to waiving a jury if the trial judge believes there is sufficient evidence to make out a case for the jury? Does he do so by the mere act of his adversary in making a like motion? Consent contemplates agreement or meeting of the minds. When a party moves for a directed verdict he generally does not even know that his adversary will make a like motion and in my opinion it takes more than the mere making of the motion by his adversary to transform his motion for a directed verdict into a waiver of jury trial.

On this point I agree with what was said by Mr. Justice Wolfe in the case of Hodges v. Smoot, 102 Utah 90, 125 Pac. (2d) 419, 421, where he said: "I cannot see that both sides waive a jury where plaintiff says 'there is no evidence to support my adversary's theory, the evidence is all my way,' whilst the adversary says 'there is no evidence to support the plaintiff—it shows

in law that the plaintiff has no case.' The two similar motions based on completely opposite interpretations of the evidence would seem to present to the court definitely a question of whether one or the other was right and if he could not conclude that either was, that very conclusion would involve the idea of a factual question for the jury. I cannot subscribe to the soundness of the reason given in Sneider v. Big Horn Milling Co., 1921, 28 Wyo. 40, 200 Pac. 1011, and similarly reasoned cases that dual motions show no material disagreement as to the facts of the case which will affect the application of the law. There may be cases where both sides agree as to the facts but each differs as to the alleged inevitable conclusion which may be drawn from them. But more often the difference is as to the matter of the presence of evidence to support the adversary's position. Surely it cannot be said that the parties have in effect stipulated as to the facts or inferences to be drawn therefrom when each says that there is ample evidence to support his position and no evidence to support his adversary's position. The sounder reason is that both sides have in effect consented to withdraw the case from the jury, but on analysis this reasoning does not stand up because it is contrary to the fact. The fact is that each says it should not go to the jury because the other party has not made a case or a defense under the evidence. The readiness with which the courts following the majority rule seize on some slight provocation to make an exception to the rule on the theory that there is a waiver of the rule—a waiver of a waiver—demonstrates the instability of the rule itself. It were better to adopt a rule which is more in accord with reality than with a fiction. The rule should be that it is for the trial court to rule on each motion for a directed verdict separately and if neither is well taken to put the case to the jury, unless the court concludes that there is no substantial disagreement as to the evidence nor as to any of the inferences or deductions which may reasonably be drawn therefrom in which case in any event there remains but a question of law for the court.''

The evidence in this case as to whether plaintiff's dog killed,

wounded or injured a sheep within the purport of section 3417.15, R. C. M. 1935, was circumstantial. I think it was a question of fact as to whether the circumstances were sufficiently strong to preclude every other reasonable hypothesis. Except for the repeated decisions of this court holding in effect that a jury is waived when both parties move for a directed verdict (a proposition to which I cannot agree), then the court should have denied both motions and submitted the case to the jury.

In view of those decisions, however, the court was right in resolving the fact issue and since it could be resolved either way, his finding should be sustained.

As before stated, I think the former decisions of this court holding that a jury is waived when both parties move for a directed verdict, and do nothing more, are erroneous.

The rule should be that if both parties move for a directed verdict, and do nothing more, there is no basis for holding that a jury trial is waived in the manner provided for by law or at all.

But in view of the long line of cases by this court holding otherwise, I subscribe to the conclusion reached in the foregoing opinion solely on the ground of stare decisis.

MR. JUSTICE METCALF:

I concur in the majority opinion. However there is some confusion and conflict in the Montana cases as to the effect of both parties making a motion for a directed verdict. 53 Am. Jur., "Trial," sec. 341, p. 274; Electrical Products Consolidated v. El Campo, Inc., 105 Mont. 386, 73 Pac. (2d) 199. The question was raised in the instant case and should be clarified. The majority opinion sets out in detail what happened at the close of the case. It is sufficient to here repeat that both sides moved for a directed verdict. The judge thereupon said, "There is nothing for me to do except decide the matter right now." A verdict was directed for the defendant and signed by the foreman of the jury.

The most frequently cited statement of the rule in this state is

from Fifty Associates Co. v. Quigley, 56 Mont. 348, 185 Pac. 155, 156: "The general rule is that a request by both parties for a directed verdict amounts to a submission of the whole case to the court, and its decision upon the facts has the same effect as the verdict of a jury, and will not be disturbed when supported by any substantial evidence. But the rule does not apply when the party whose request has been denied, thereafter makes a season-able request for the submission of the facts to the jury." Olsen v. Zappone, 83 Mont. 573, 273 Pac. 635; Anderson v. Border, 75 Mont. 516, 244 Pac. 494; Midland Motor Co. v. Norwich Union Fire Ins. Soc. Ltd., 72 Mont. 583, 234 Pac. 482; Barkemeyer Grain & Seed Co. v. Hannant, 66 Mont. 120, 213 Pac. 208; Stoltze Land Co. v. Westberg, 63 Mont. 38, 206 Pac. 407; Buckhouse v. Parsons, 60 Mont. 156, 198 Pac. 444; Bank of Commerce v. United States Fidelity & Guaranty Co., 58 Mont. 236, 194 Pac. 158.

53 Am. Jur., "Trial," section 342, page 274, says: "* * * if both parties to an action at the conclusion of the testimony request the court to direct a verdict—the plaintiff moving for a verdict in his favor, and the defendant for a verdict in his favor—and make no request that the jury be allowed to determine any question of fact, and do not otherwise indicate any desire to avail themselves of their right to have questions of fact submitted to the jury, if their respective motions are denied, the parties will be deemed to have waived the right to a trial by jury and to have constituted the court trier of questions of both law and fact."

In principle I agree with Mr. Justice Angstman's criticism of the foregoing rule and concur in his opinion that the general rule is so well established that the precept of stare decisis prevents a change. Parenthetically it may be noted that while under the decisions of the federal courts the rule cited is "the rule which obtains" as stated in the opinion of Mr. Chief Justice Adair, yet when the Federal Rules of Civil Procedure were promulgated in 1937 they said: "A motion for a directed verdict which is not granted is not a waiver of trial by jury even though

all parties to the action have moved for directed verdicts." Rule 50, Federal Rules of Civil Procedure, 28 U. S. C. A. Compare Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 57 S. Ct. 809, 81 L. Ed. 1177.

In Annotations in 108 A. L. R. 1315, 69 A. L. R. 634, and 18 A. L. R. 1433, the above rule is said to be the majority rule and is stated in substantially the same terms. Montana is given as one of the states that follow the majority rule. But as stated above, the rule is only applicable when both parties move for a directed verdict and do nothing more, for after the ruling on the motion but before directing the verdict, either counsel can request that the disputed facts be submitted to the jury. In Osterholm v. Boston & Montana Consol. Copper & Silver Min. Co., 40 Mont. 508, 107 Pac. 499, 503, the court quoted from a United States Supreme Court decision of Empire State Cattle Co. v. Atchison, T. & S. F. R. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70: "Nothing sustains the view that a party may not request a peremptory instruction, and yet, upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting, or the inferences to be drawn from the testimony are divergent."

And in Fifty Associates Co. v. Quigley, supra, 56 Mont. at page 354, 185 Pac. at page 156, the court said: "But the rule does not apply when the party whose request has been denied, thereafter makes a seasonable request for the submission of the facts to the jury." Citing Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654, and Sena v. American Turquoise Co., 220 U. S. 497, 31 S. Ct. 488, 55 L. Ed. 559, as well as Empire State Cattle Co. v. Atchison, T. & S. F. R. Co., supra. See also Bank of Commerce v. United States Fidelity & Guaranty Co., supra, and Moore et al. v. Crittenden et al., 62 Mont. 309, 204 Pac. 1035.

In Stiemke v. Jankovich, 72 Mont. 363, 233 Pac. 904, 907, before the court had instructed the jury the appellants requested a submission to the jury of all the issues raised by the pleadings

and the evidence. The court said: "It is only in the absence of such a request that the court may deem the case submitted as on an agreed statement of facts." The court there ruled that when there was such a request after the motion was ruled on but before the formal instruction of the jury, it was proper to submit the case to the jury. See also, E. Buckhouse v. Parsons, supra, and Harvey Mack Co. v. Ryan, 80 Mont. 524, 261 Pac. 283.

When both sides move for a directed verdict and do nothing more the court may of its own motion deem the evidence upon vital questions in conflict and submit the cause to the jury either by way of special findings or request a general verdict. Hollingsworth v. Ruckman, 72 Mont. 147, 232 Pac. 180, 182. In that case the court said: "Here the court was in doubt upon conflicting evidence. It desired the jury's judgment upon the question whether the parties intended to include the note in their contract of recission and so submitted special findings touching that issue. This was commendable practice. Disputed points deemed material by the court often might be resolved to the court's satisfaction if special findings were required."

Or instead of making a request to go to the jury after the ruling on the motion and before the verdict is directed, counsel may couple their request for a directed verdict with a request for other instructions or a petition to go to the jury on disputed questions of fact in the event of an adverse ruling. Steimke v. Jankovich, supra.

The theory of all this is that the constitutional right to a trial by jury is not waived by motions for a directed verdict unless nothing else is done but either party may save its rights by a seasonable request for findings by the jury on conflicting evidence or disputed questions of fact or save its rights by making a request to go to the jury at the same time that counsel makes the motion. And even though both sides move for a directed verdict without requesting jury findings, the court of its own motion can send the case to the jury and can do so over the desire of counsel.

In Hollingsworth v. Ruckman, supra, it was contended that

a motion by both sides for a directed verdict without anything else appearing amounted to an agreement by counsel that jury trial would be waived, but the court held there that the power of the court could not be limited by such agreement, that the court might not agree with counsel that it was only a question of law and that there were no disputed questions of fact and therefore the court could deem the evidence conflicting and send the case to the jury.

The confusion arises out of the opinion of the court in Electrical Products Consolidated v. El Campo, Inc., supra. In that case plaintiff's counsel made a motion for a directed verdict. Defendant's counsel then asked the court if he should make his motion for a directed verdict before the ruling on the plaintiff's motion and the court replied that he should do so and that it would consider both motions together. The defendant then made this statement: ''Pursuant to the instructions of the court, defendant presents its motion before the plaintiff's motion is ruled upon, and without a waiver thereby of the right to go to the jury, but with the express reservation of that right.'' 105 Mont. at page 389, 73 Pac. (2d) at page 201. Then counsel made a motion for directed verdict on several grounds. The court instructed the jury to find a verdict for the plaintiff, which it did. Defendant contended that the express reservation of his right to go to the jury made at the time of his motion for a directed verdict reserved that right in the event of an adverse ruling. Citing in support of that contention, Harvey E. Mack Co. v. Ryan, supra; Stiemke v. Jankovich, supra, and Fifty Associates Co. v. Quigley, supra. The court said: ''It will be noted, however, that in those cases it is indicated that such a reservation must specifically point out certain fact issues which it is desired to have the jury pass upon notwithstanding the motion. This point is not of persuasive effect here, as will hereinafter appear.'' Further on the court said: ''In the final analysis we must hold that the case, having been submitted to the court by motions for directed verdict tendered by both sides, was submitted for all purposes and for a final decision on the merits.

\* \* \* The case having been submitted in the manner hereinbefore described, it becomes our duty, after a review of the record, to decide whether or not there was any evidence therein sufficient to warrant the trial court to direct a decision of the matter in favor of the plaintiff.'' The court then proceeded to examine the evidence and found that there was no substantial evidence to sustain the directed verdict and therefore reversed the case. The effect of the decision is to find that the trial court erred in directing a verdict for the plaintiff in the case for the reason that there was insufficient evidence under any theory to sustain that verdict. In this respect the case follows General Fire Extinguisher Co. v. Northwestern Auto Supply Co., 65 Mont. 371, 211 Pac. 308. As pointed out in the latter case, as well as in the above quotation, the point that there was a right to go to the jury was not persuasive to the court and therefore any declaration that the court might make thereon is dictum. It is that dictum, however, that may cause confusion.

An examination of the cases cited, Stiemke v. Jankovich, supra; Harvey E. Mack Co. v. Ryan, supra, and other cases that we have noted above, demonstrates that there is nothing in the cases to justify the court's conclusion that you must specifically point out the reservations of the fact issues that you desire to have the jury pass upon. In Harvey E. Mack Co. v. Ryan, supra, there was no reservation and the court of its own motion submitted the cause to the jury. In deciding that this was proper and that the court had not erred in doing so, Mr. Justice Matthews said: ''Each party to such an action as this has a constitutional right to a trial by jury. If, then, when each party moves for a directed verdict, and the court denies each motion, and thereupon proceeds to discharge the jury and determine the case upon questions of law alone, such action amounts to a deprivation of that right and the assessment of a penalty for making the motions.'' [80 Mont. 524, 261 Pac. 287.]

In the statement of the facts in the Stiemke case, 72 Mont. 363, on page 370, 233 Pac. 904, all that appears is that the appellants requested the submission to the jury of all the issues raised by

the pleadings and the evidence and then further particularized certain facts that they wished submitted to the jury. The court did not distinguish whether the particularized matters should have been submitted or whether the request that all the facts be submitted was sufficient. It merely said, as we have quoted above, that it was only in the absence of a request that the court may deem the case submitted as on an agreed statement of facts. Despite the language in Electrical Products Consolidated v. El Campo, Inc., supra, in my opinion the rule in Montana is as follows: When a motion is made for a directed verdict and nothing more is done the case is submitted to the jury as if upon an agreed statement of facts, but if there is an express reservation of the right to go to a jury either on a specific fact issue or upon all the issues of fact, coupled with a request for a directed verdict, then in case of an adverse ruling the case must go to the jury. If, after a ruling on the motion and before the formal direction of the jury, either party requests to go to the jury on conflicting evidence or disputed questions of fact, then the cause must go to the jury. In the event nothing more is done, but the judge, of his own motion, wants to submit the case to the jury either for special findings or upon all the conflicting issues, the court may do so. In the instant case, both sides made a motion for a directed verdict. Nothing more was done. The court asked counsel if there was anything more they had to say, and then specially directed the question to counsel for the plaintiff, asking if he had anything more to say. Counsel for plaintiff said he still stood on his motion. Under these circumstances the court had the option of sending the cause to the jury to determine facts that it deemed disputed or it could accept the agreement of counsel that they would submit the cause to the court. Had counsel while making the motion reserved the right to go to the jury or had either party made a request to go to the jury, under the present law of Montana, the dictum in the case of Electrical Products Consolidated v. El Campo, Inc., supra, excluded, the trial judge would have been in error in refusing the right to go to the jury unless the evidence was such that if the

350

case were submitted to the jury and a verdict returned for one party it would be the duty of the court to grant a new trial on motion of the opposing party. Lister v. Donlan, 85 Mont. 571, 281 Pac. 348, 72 A. L. R. 1; Stiemke v. Jankovich, supra. Or where the evidence is susceptible of but one construction by reasonable men. Pankovich v. Little Horn State Bank, 104 Mont. 394, 66 Pac. (2d) 765; Gagnon v. Jones, 103 Mont. 365, 62 Pac. (2d) 683, and cases therein cited.