No. 88-545

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

BETTY GRABENSTEIN,

       Plaintiff and Appellant,

  -vs-

TERRY SUNSTED,

       Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        M. Richard Gebhardt, Missoula, Montana

    For Respondent:

        Robert L. Fletcher, Thompson Falls, Montana

_____

Submitted on Briefs:  April 6, 1989

Decided:  May 2, 1989

Filed:

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The plaintiff, Mrs. Grabenstein, initiated this suit in justice court to recover the value of her dog which was shot and killed by the defendant, Mr. Sunsted, upon discovery of the dog in his chicken coop. Following a trial de novo, the District Court for the Twentieth Judicial District, Sanders County, entered judgment for the defendant and awarded him $30 damages for the loss of his chickens and $45.50 for costs incurred in litigation. From that judgment, the plaintiff appeals. We affirm.

The issues are:

1. Did the District Court err in determining that the defendant had a right to shoot the dog which was killing his poultry?

2. Did the District Court err in its refusal to receive proposed findings of fact or conclusions of law and to waive counsel's request for oral argument?

Both parties live in a rural setting approximately 5 miles from Heron, Montana. Defendant Sunsted's property is located just over 1.5 miles from the Grabensteins, where the Sunsteds carry on various agricultural pursuits, including the raising of chickens. The Grabensteins were the owners of a large, black Labrador retriever named Duke, whose fate is the subject of this appeal.

While performing his morning chores on July 16, 1985, Mr. Sunsted heard a dog bark in the vicinity of his chicken coop. Having previously experienced problems with coyotes, Mr. Sunsted grabbed a shotgun from the barn before proceeding to the coop. Outside the coop he found five dead chickens. The door to the coop was broken down. Inside the coop, which was a fully enclosed structure, six more chickens lay dead. The black Labrador, which was later claimed by the

Grabensteins to be "Duke," was found in the corner trying to catch the last remaining live chicken in the coop. Mr. Sunsted shot the dog, killing him instantly, then reported the incident to the deputy sheriff. The deputy traced the ownership of the dog to the Grabensteins, who were notified of the shooting. Mr. Sunsted disposed of the dog himself. The Grabensteins later sought damages for the loss of Duke, estimating his value at $3,500.

I

Did the District Court err in determining that the defendant had a right to shoot the dog which was killing his poultry?

The common law rule on this matter is as follows:

> . . . to justify the killing of a dog in defense of property there must be an apparent necessity for the defense, honestly believed to be real, and the acts of defense must in themselves be reasonable, or in other words, it is necessary to show that the danger from its attack was imminent at the time, and that the injury could not otherwise have been prevented.

Trenka v. Moos (1946), 118 Mont. 607, 613, 168 P.2d 837, 840-41.

Trenka was the first case in Montana involving a "dog in the chicken coop" scenario. This Court stated that a person protecting his property has the right to act upon the reasonable appearance of things and if there is reasonable cause to believe that necessity for killing the dog exists, that person is not liable. 168 P.2d at 841. In Trenka, this Court held that the chicken owner was not reasonably justified in shooting the dog because the dog was not in the act of molesting the fowl at the time the fatal shot was fired. 168 P.2d at 841. Although plaintiff in this case argues that the District Court's conclusion should have been the same as

3

that reached in _Trenka_, we conclude that the facts of this case are significantly different from those presented in _Trenka_ so as to justify a different result.

When the defendant was asked to describe what the dog was doing when he first saw him, he stated:

> Well, he was kind of in a pounce position with his front down. And there was a chicken that was in the corner trying to escape his goings on. And he was biting at it and the chicken would fly and he'd reach up -- now he was a big dog like, you know, well over 100 pounds I would guess. I really don't know but that's what I would guess.
> And he would rise up trying to catch the chicken and the chicken would come down. And of course in that small of confines with water and feeder in there, he had it pretty well, you know, cornered.

While the defendant did not actually see the chicken in the dog's mouth, he described the bird as being "poked full of teeth holes and pretty well chewed up" as if "something has had a hold of it . . ." The defendant eventually had to kill the chicken because of its mangled state. Testimony was offered to the effect that Duke was a gentle dog who was accustomed to living and even sleeping with chickens. Regardless of this testimony as to Duke's stoic character, the lower court found that the defendant had no prior knowledge of the dog's temperament or disposition toward poultry when he came upon the sight of a dog cornering one chicken surrounded by numerous dead chickens. The evidence supports this finding that defendant had no reason to believe that the dog would just as soon sleep with chickens as terrorize them.

The plaintiff argues that because eleven chickens already lay dead and the only property remaining in peril was a $2.50 chicken, it was not reasonable for the defendant to shoot the dog in what plaintiff characterizes as an act of

4

vengeance. The District Court determined otherwise, and we will not set aside that determination if it is supported by substantial credible evidence. Parker v. Elder (Mont. 1988), 758 P.2d 292, 293, 45 St.Rep. 1305, 1307.

Again, the defendant caught the dog later identified as Duke in the act of molesting one of his chickens. The evidence establishes that it reasonably appeared to the defendant that the dog had broken into a fully enclosed chicken house, had killed 11 chickens, was attacking a 12th chicken, could not be contained in the coop because of its broken door, and that the size and unknown temperament of the dog made physical restraint unrealistic and potentially dangerous. Under those circumstances, we conclude that it was reasonable for defendant to shoot the dog under the common law rule as set forth in Trenka. We hold that substantial credible evidence exists to support the District Court's determination.

The plaintiff argues that the common law rule is abrogated by statute in Montana. The two relevant statutes are §§ 81-7-401 and 402, MCA. The first statute, § 81-7-401, MCA, allows the killing of a dog who kills, wounds, or injures any livestock not belonging to the dog's master. In Granier v. Chagnon (1949), 122 Mont. 327, 203 P.2d 982, this Court held that the definition of livestock under this statute in effect at that time does not include fowl.

Plaintiff argues that § 81-7-402, MCA, is the applicable statute which subjects the owner of a predator dog to liability for damages only. That statute reads in relevant part:

> (1) The owner of livestock or poultry injured or killed by any dog may recover as liquidated damages from the owner of the dog the actual value of the animals killed or the value of the damages sustained by reason of the injuries as the case may be.

5

Because neither this statute or § 81-7-401, MCA, authorize the killing of a dog who destroys fowl, the plaintiff argues that the common law rule has been abrogated and defendant's only remedy is that of damages under § 81-7-402, MCA. We disagree.

At common law, an owner of domestic fowl has a right to kill a dog attacking or menacing their safety if such is necessary for their protection, and that common law right "is not abrogated by a statute which creates a right in a nonowner of certain enumerated animals, not including fowls, to kill a dog attacking such animals." 3A C.J.S. Animals, § 292.

These statutes do not limit, either expressly or impliedly, the poultry owner's right at common law to kill an attacking dog when such a killing is reasonably justified. Rather, the statutes provide additional relief after the fact and address specific situations not covered by the common law. We hold that the defendant's common law right to kill plaintiff's dog was not abrogated by Montana's statutes on the subject.

II

Did the District Court err in its refusal to receive proposed findings of fact or conclusions of law and to waive counsel's request for oral argument?

At the closing of the case, plaintiff's counsel offered to submit proposed findings of fact and conclusions of law which were refused by the court. Instead, the court offered five minutes to each party in which to be heard. Neither party took advantage of that time. We therefore conclude that no basis exists upon which to allege error as to the issue of oral argument.

6

Furthermore, there is no mandatory requirement that the District Court accept proposed findings of fact or conclusions of law. Rule 52, M.R.Civ.P., provides that:

> The court may require any party to submit proposed findings of fact and conclusions of law for the court's consideration and the court may adopt any such proposed findings or conclusions as long as they are supported by the evidence and law of the case. (Emphasis added.)

Here, the District Court properly exercised its discretion in declining to accept proposed findings or conclusions.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices