No. 94-178

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

Plaintiff and Respondent,

**FILED**

SEP 20 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

VALENTINE ANTONE WALTER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Margaret L. Borg and Marcia M. Jacobson, Public
Defender's Office, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Jennifer
Anders, Assistant Attorney General, Helena, Montana:
Robert L. Deschamps, III, Missoula County Attorney,
Betty Wing, Deputy Missoula County Attorney,
Missoula, Montana

Submitted on Briefs: July 12, 1994

Decided: September 20, 1994

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Fourth Judicial District Court, Missoula County, bench trial, finding the defendant, Valentine Walter, guilty of misdemeanor cruelty to animals. We affirm.

There are three issues on appeal:

I. Was the shooting of the dog justifiable under § 81-7-401, MCA?

II. What case law provides proper precedent for the instant case?

III. Is there a basis for invalidating the complaint filed against Walter?

### FACTUAL BACKGROUND

The following facts are gleaned from testimony presented at trial. On March 7, 1993, Stacey Ellis, accompanied by her two small dogs, a black, miniature pomeranian, Skeeter, and a miniature dachshund, Miley, drove to her mother's house for a visit. She let the dogs out her mother's patio door and then proceeded to lie down with her niece for a nap. Some minutes later, she heard a gunshot.

She went outside to ascertain what had occurred and heard her mother calling for her dogs. Stacey saw the appellant, Valentine Walter, (Walter) and asked him whether he had seen her little black dog, Skeeter, and he reported to her that he had killed the dog and she could find its body by the fence. She walked onto the defendant's property and found her dog's body on a woodpile near the fence. She took her dog back to her parents' house and called the Missoula County Sheriff's Office.

At trial, Walter testified that at about 2:30 or 3:00 on March

2

7, 1993, he returned to his home and found a small, black dog near his sheep pen chasing a small lamb. He stated that the lamb was not in the actual sheep pen but was still on his property. When he saw the black dog chasing the small lamb, he went into the house and retrieved his 20-gauge shotgun. He returned outside, saw that the dog was still near the sheep barn, then saw it start running toward the fence and shot the dog as it ran along the fence. He further stated that he was fearful that the dog would harm the lamb, which was somewhat frail because its mother had died.

Joe McNeal, a deputy sheriff for Missoula County, testified that when he was summoned to the Ellis home about the incident, he inspected the area around Walter's home. He stated that there was still a fair amount of snow on the ground and he could see tracks heading along the fenceline to an area where there was a camper. He stated that the tracks went up to that point but he could not locate any tracks going beyond that area. McNeal further testified that the camper was approximately 100 to 120 feet from the sheep pen. He could not find any footprints in the area of the sheep pen but the defendant told him that the dogs had been in that area.

PROCEDURAL BACKGROUND

Walter was charged by complaint with misdemeanor cruelty to animals on March 31, 1993, for the shooting of the small, black dog. An amended complaint charged the defendant with a second count of misdemeanor cruelty to animals in the shooting of a black labrador retriever. In a proceeding before the Justice Court of Missoula County, Walter was found guilty of count I - cruelty to

3

animals in the shooting of Skeeter and not guilty of count II -
cruelty to animals in the shooting of the labrador retriever.
Walter appealed on September 13, 1993, to the District Court of the
Fourth Judicial District. The District Court found Walter guilty
in a trial de novo on January 10, 1994, after a bench trial on
November 16, 1993. Walter appealed the District Court's February
7, 1994 judgment on March 3, 1994.

## I. JUSTIFIABLE SHOOTING OF DOG

The State prosecuted Walter under § 45-8-211, MCA, which
provides:

> Cruelty to animals - exception. (1) A person commits
> the offense of cruelty to animals if without
> justification he knowingly or negligently subjects an
> animal to mistreatment or neglect by:
> (a)...killing an animal.

Walter admits that he shot the dog but contends that his
actions were justified because the animal was harassing his sheep.
He argues that the killing of the dog was justified under § 81-7-
401, MCA, because "Walter's sheep had been the victims of numerous
attacks by neighborhood dogs" and he was acting under the
"reasonable appearance of things;" that if he allowed the dog to
leave his premises, it would return another day to harm his sheep.
The State argues that Skeeter was not engaged in any of the conduct
described in § 81-7-401, MCA.

Section 81-7-401, MCA (1991), provides as follows:

> Killing of dogs destroying or injuring stock - notice to
> owner. Any dog, whether licensed or not, which, while
> off the premises owned or under control of its owner,
> shall kill, wound, or injure any livestock not belonging
> to the master of such dog shall be deemed to be a public
> nuisance and may be killed forthwith by any person, or

4

the owner, when notified, shall kill such dog within 24 hours, and if he fails to do so, an officer may be notified and shall kill or cause to be killed such dog. Nothing contained herein shall apply to any dog acting under the direction of its master or the agents or employees of such master.

Walter argued that he was justified in killing the dog under § 81-7-401, MCA. Although the correct statute to be applied is cited above (§ 81-7-401, MCA (1991)), Walter, the State and the District Court applied the wrong version of the statute. The statute applied in the lower court was § 81-7-401, MCA (1993). However, § 81-7-401, MCA (1993), did not go into effect Until October of 1993, and the incident at issue occurred on March 7, 1993. Therefore, the statute which should have been applied was the 1991 version of § 81-7-401, MCA, cited above.

The 1993 version of § 81-7-401, MCA, states in pertinent part that "[a] dog...that...harasses, kills, wounds, or injures livestock...may be killed immediately by the owner of the livestock...." Section 81-7-401(2), MCA, (1993). "'[H]arasses' means worries, chases, or runs after livestock...." Section 81-7-401(1), MCA, (1993). The 1991 version of the statute provides for the killing of a dog only if it "kill[s], woundrsl, or injure[s] any livestock;" the harassment of sheep is not listed as conduct justifying the killing of a dog. Section 81-7-401, MCA (1991).

Walter testified that when he drove into his driveway on March 7, 1993, he saw the small, black dog chasing one of his lambs back by the sheep pen and so he went into his house, returned outside with a 20-gauge shotgun and shot the dog as it ran along the fence. Under the 1993 version of the statute, if proven at trial, the dog

5

would have been "harassing" the small lamb and the defendant could have been justified in shooting the dog. However, the applicable statute, the 1991 version of § 81-7-401, MCA, does not include "harassment" in the list of conduct for which a livestock owner is justified in shooting a dog.

At any rate, there is testimony from a State witness, a disinterested deputy sheriff, stating that the dog was not even in an area where he could have harassed, injured, wounded, or killed any sheep. The District Court found this State's witness' testimony to be more credible than that of the appellant. "The weight of the evidence and the credibility of the witnesses are exclusively within the province of the trier of fact: when the evidence conflicts, the trier of fact determines which shall prevail." State v. Bower (1992), 254 Mont. 1, 8, 833 P.2d 1106, 1111.

There was sufficient evidence for the District Court to determine that the dog was not in the process of killing, wounding or injuring livestock at the time he was shot, which is the conduct which must be proven to justify the shooting of the dog under § 81-7-401, MCA (1991). Officer McLean testified that the area where he found footprints of the two dogs was about 100-120 feet from the sheep pen. He further testified that he did not see any tracks beyond that point but he would have been able to see them if there were any to be found. Finally, he stated that he did not see any footprints in the area of the sheep pen. Walter, himself, provided no evidence that the dog had injured, wounded, or killed a lamb or

6

sheep.

Under either application of the statute, § 81-7-401, MCA, (1993), or § 81-7-401, MCA (1991), there is sufficient evidence that the dog was not harassing, injuring, wounding or killing livestock. We conclude that the District Court did not err in its judgment even though it applied the wrong version of § 81-7-401, MCA. "We will affirm a correct result regardless of the reasoning used by the lower court." Higham v. City of Red Lodge (1991), 247 Mont. 400, 402, 807 P.2d 195, 196. (Citation omitted.) We hold that the District Court did not err in determining that Walter was guilty of misdemeanor cruelty to animals because he was not justified in shooting the dog who had entered onto his property.

## II.  APPLICABLE  CASE  LAW

Walter argues that Granier v. Chagnon (1949), 122 Mont. 327, 203 P.2d 982, provides guidance for this Court in deciding the instant case. He asserts that Granier is a case involving the harassment of sheep and it was decided under an earlier version of the statute at issue here. He further contends that the other two Montana cases involving dogs discuss altercations between dogs and chickens and that "dog in the coop" cases are decided under common law but in the instant case, statutory law, not common law, is applicable.

The State counters that Walter "proposes a rule that would allow an owner of livestock to shoot any dog seen on property where sheep are kept, whether the dog 'harasses, kills, wounds, or injures livestock.'" It argues that this is beyond the

7

justification provided in the statute and is a departure from _Granier,_ the only "dog in the flock" case in Montana.

The three cases cited by both parties are Trenka v. Moos (1946), 118 Mont. 607, 168 P.2d 837; _Granier;_ and Grabenstein v. Sunsted (1989), 237 Mont. 254, 772 P.2d 865. _Trenka_ and _Grabenstein_ involved the shooting of dogs that were killing chickens while _Granier_ involved the shooting of a dog which was caught feeding on a freshly killed sheep. The "dog in the coop" cases are decided under the rule of common law that:

> ...to justify the killing of a dog in defense of property there must be an apparent necessity for the defense, honestly believed to be real, and the acts of defense must in themselves be reasonable, or in other words, it is necessary to show that the danger from its attack was imminent at the time, and that the injury could not otherwise have been prevented.

_Grabenstein,_ 772 P.2d at 866. "Dog in the flock" cases, however, are decided under statutory law. _Granier,_ 203 P.2d at 988. Sheep were considered to be "livestock" and therefore, covered by the provisions of 3417.15, R.C.M. 1935 (now retitled § 81-7-401, MCA.) _Granier,_ 203 P.2d at 988. In the instant case, Walter's sheep are considered to be livestock and are covered by § 81-7-401, MCA. _Granier_ interprets this very same statute and is therefore, proper precedent for the instant case.

In _Granier,_ William and Paul Chagnon discovered Jerry V. Waldwinkel, a German short-haired pointer and his companion, a yellow spotted fox terrier, on a freshly killed sheep in their pasture. They had been alerted to trouble in the pasture when a number of their sheep came rushing to the barnyard area, including

8

one severely injured sheep. The Chagnons had been previously plagued by raids on their sheep at the paws of unidentified marauders that had killed 16 to 18 head of sheep.

The _Granier_ Court concluded that:

> [P]laintiff's dog was caught red-footed and red-fanged, in Leon Chagnon's sheep pasture, tearing and chewing on one of Chagnon's ewes still bleeding and warm, and that another of Chagnon's sheep,-her belly ripped-her face practically torn off,-had just escaped a like fate by running to the barn with the remainder of the flock. Loss of some sixteen or eighteen sheep to unidentified raiders had most recently been suffered, and defendant was authorized to act forthwith on what he witnessed in the Chagnon sheep pasture on the afternoon of June 8, 1947. The law accords him "the right to act on the reasonable appearance of things."

_Granier,_ 203 P.2d at 988. This case is easily distinguishable from _Granier._ In the instant case, there was testimony from a disinterested witness that the dog's footprints were found 100 to 120 feet from the sheep pen so it could not have even chased a lamb in the area of the sheep pen. Further, no testimony was presented to establish that the dog had injured, wounded or killed any lambs or sheep. Even though Walter had recently lost a number of sheep, there was no evidence presented which would warrant a justifiable shooting of the dog under § 81-7-401, MCA (1991). Under _Granier,_ Walter could not establish that "the reasonable appearance of things" justified his actions. Under the statute and principles enunciated in _Granier,_ Walter was not justified in shooting Skeeter and the District Court correctly found Walter guilty of misdemeanor cruelty to animals in a trial de novo.

### III. INVALIDATION OF COMPLAINT

Walter argued that Stacey Ellis' own actions set into motion

the events which ultimately led to the shooting of Skeeter. He contends that Ellis came before the court without clean hands and for this reason, the case should have been dismissed based on the principle of fundamental fairness. The State counters that Ellis was not the party who signed the complaint: the complaint was filed and signed by a Missoula Deputy County Attorney. Moreover, the State asserts, this argument is being made for the first time on appeal, and therefore, should not be considered.

We agree with the State. The validity of the complaint was not challenged at the District Court. This Court will not address an issue raised for the first time on appeal. See § 46-20-701(2), MCA. Moreover, none of the exceptions to this rule, listed in subsections (a) through (c) of § 46-20-701(2), MCA, apply.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10